Moses Casler *et al.*

*v.*

Asahel B. Byers.

*Filed at Ottawa October 31, 1889.*

1. CONSTRUCTION OF A DEED—*two descriptions.* Where there is a doubt as to the construction of a deed, it will be taken most favorably for the grantee; so that, if the deed contains two descriptions which do not coincide, the grantee may elect that which is most to his advantage.

2. A mortgage described the premises as the south-east quarter of the south-east quarter of section 8, and the north half of the south-west quarter of section 9, "all in township forty (41) north, range 3, east of the third (3d) P. M." The land was in township 41: *Held,* that no correction of the mortgage, either by the parties or the decree of a court of chancery, was necessary. There being two descriptions given as to the township, the mortgagee had the right to rely upon the one most favorable to himself.

3. HOMESTEAD—*release—of a further acknowledgment after the reforming of a deed for mistake.* Where a mortgage by which the homestead estate is properly released by a husband and wife, is corrected by the parties or by decree of court, for the purpose of curing a mistake in the description of the premises, a second certificate of acknowledgment showing such a release by the wife, is not necessary.

42—129 ILL.

4. Estoppel—*inducing action to the injury of another.* Where a person, by his words or conduct, voluntarily causes another to believe in the existence of a certain state of things, and induces him to act upon that belief, so as to change his previous position, the former will be estopped to aver against the latter a different state of things.

5. Same—*purchase of mortgage debt—at an amount in excess of what is due—induced by the mortgagor.* Where a mortgagor, for the purpose of inducing another to purchase the mortgage indebtedness from the holder, produces a writing, signed by himself and the mortgagee, showing a settlement, and that there is due on the mortgage a certain sum, and the mortgage is purchased on such assurance by paying the sum named, the mortgagor and his wife will, on bill to foreclose such mortgage, be estopped from claiming that the sum so stated was not due at the time of the purchase.

6. And where the wife joins with her husband in a mortgage of his lands to secure his debt, whereby she releases her right of dower and homestead estate, and the husband induces a third party to purchase the mortgage debt, after its maturity, at a certain price, upon his assurance that the price paid is due on the note and mortgage, so that he will be estopped from showing that such sum was not due, the wife will also be estopped, and can not be allowed to redeem for a sum less than that for which her husband is liable.

7. Attorney's fee—*on foreclosure.* A reasonable attorney's fee may be allowed to a party foreclosing a mortgage by bill, when the mortgage so provides; and what is a reasonable fee is a question of fact, to be determined from the evidence in the case.

Writ of Error to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. O. H. Horton, Judge, presiding.

Mr. Harvey A. Jones, for the plaintiffs in error:

Mrs. Casler should have been allowed to redeem from the mortgage by paying the sum actually due thereon, and was not estopped by any conduct of her husband to which she was no party. *Allen* v. *Hawley,* 66 Ill. 169; *Emory* v. *Keighan,* 94 id. 543; *Olds* v. *Cummings,* 31 id. 188; *Hamilton* v. *Lubukee,* 51 id. 415; *Fortier* v. *Darst,* 31 id. 212; *Walker* v. *Dement,* 42 id. 272; *White* v. *Sutherland,* 64 id. 181.

A stranger shall not be bound by or take advantage of an estoppel. *Massure* v. *Noble,* 11 Ill. 531.

As to the land in dispute, the homestead right was not released in the certificate of acknowledgment.

If Casler is estopped, it must be by act *in pais*, for the purported settlement of March 10, 1881, between Divine and Casler, does not have that effect, for if the contest here was between Divine and Casler, it could and would be inquired into, and as Byers testifies there was a second settlement of the mortgage indebtedness November 23, 1881, said second settlement must, of necessity, supersede the alleged prior one.

Now, as to the second paper,—viz., the one signed by Casler and Rowen, and the one upon which the master and court acted,—it should not have that effect. It was not between the same parties or privies. Bigelow on Estoppel, (3d ed.) 59; Freeman on Judgments, 159; *Insurance Co.* v. *Pennell*, 19 Bradw. 212.

It is no estoppel, because it is confessedly false, and is repudiated by Byers, Rowen and Casler. It states Rowen had, on that day, purchased the note and mortgage in question, and that there was the sum of $4500 due thereon. Is it any more true that there was $4500 due thereon than that Divine had sold it to Rowen? Estoppels must be mutual, and as Byers was not estopped by it, so neither was Casler.

The burden of proof is upon Byers to establish the estoppel. *Merrell* v. *Tobin*, 30 Fed. Rep. 738; *Merrell* v. *Shea*, id. 743.

It was error to allow $500 attorney's fees to be taxed as costs. A sale could have been made under the power, and have saved at least $450.

Mr. WILLIAM LATHROP, for the defendant in error:

The right to redeem is conditional upon payment of the entire amount due on the mortgage. 2 Jones on Mortgages, sec. 1070; *Lamb* v. *Montague*, 112 Mass. 353.

The description of the property was good without the correction made. *Sharp* v. *Thompson*, 100 Ill. 447; *Bowen* v. *Prout*, 52 id. 354.

The doctrine of estoppel is, that when a person, by his words or conduct, voluntarily causes another to believe in the existence of a certain state of things, and induces him to act upon that belief, so as to change his previous position, he will be estopped to aver against the latter a different state of things.

The elements to constitute estoppel are: First, there must have been a representation concerning material facts; second, the representation must have been made with knowledge of all the facts; third, the party to whom it was made must have been ignorant of the truth of the matter; fourth, it must have been made with the intention that it should be acted upon; fifth, it must have been acted upon. *People* v. *Brown*, 67 Ill. 435. To the same effect are *Ball* v. *Hooten*, 85 Ill. 159; *Heffner* v. *Vandolah*, 57 id. 520; *Noble* v. *Chrisman*, 88 id. 186; *Talcott* v. *Brackett*, 5 Bradw. 60; Bigelow on Estoppel, (2d ed.) 345.

Mr. JUSTICE BAKER delivered the opinion of the Court:

Asahel B. Byers, defendant in error, exhibited in the DeKalb circuit court, against Moses Casler, and Catherine M. Casler, his wife, plaintiffs in error, a bill to foreclose a mortgage. The mortgage deed contained a power of sale, and was executed by said Caslers on the 8th day of April, 1876, to one R. L. Divine, since deceased, on one hundred and twenty acres of land, for the purpose of securing the payment of a promissory note of that date, for $3350, made by said Moses Casler to said Divine, due five years after date, and drawing ten per cent interest, payable annually. The note was, after its maturity, and in the lifetime of Divine, assigned, without recourse, to said Byers, and the note and mortgage delivered to him. Answer was filed to the bill to foreclose, and issues formed, and upon application of plaintiffs in error, the venue of the cause was changed to Winnebago county. A hearing was had in the circuit court of this latter county, at the October term, 1887, which resulted in a decree against both the plaintiffs in

error, foreclosing the mortgage, and against said Moses Casler for $5429.53 and costs of suit, the latter to include a solicitor's fee of $500 for foreclosing said mortgage.    This decree was affirmed in the Appellate Court for the Second District, and the cause thereupon brought to this court by writ of error.

Several grounds are here urged for a reversal of the decree.

*First*—It is claimed it was error to order a sale of the mortgaged premises freed from the homestead right of the plaintiffs in error.    In the body of the mortgage, as it stood when executed and acknowledged in April, 1876, and in the certificate of acknowledgment then made, there were express and formal waivers of the homestead right.    The mortgaged property was mentioned in the deed as being situate in the county of DeKalb, and State of Illinois, and was described as follows: "The south-east quarter ($\frac{1}{4}$) of the south-east quarter ($\frac{1}{4}$) of section number eight (8), and the north half ($\frac{1}{2}$) of the south-west quarter ($\frac{1}{4}$) of section number nine (9), all in township forty (41) north, range three, east of the third (3d) P. M., containing one hundred and twenty acres, more or less."    The lands were in fact located in township 41 north, range 3 east.    In 1879, R. L. Divine, the mortgagee, discovering that the word "one" was omitted in the description of the land contained in the deed, obtained the consent of both of the plaintiffs in error to have said word "one" inserted in the mortgage, which was accordingly done, and the mortgage made to read, "all in township forty-one (41) north," etc., and the mortgage, as thus amended, was acknowledged, and a second certificate of acknowledgment made, and the mortgage recorded for a second time.    The second certificate of acknowledgment contained no waiver of the right of homestead.    The contention of plaintiffs in error is, that the mortgage which was foreclosed showed a waiver of homestead to lands in township 40, but did not show a waiver of homestead to lands in township 41.

The deed as originally written and executed was sufficient to constitute it a valid mortgage upon the lands of Moses Casler

in township 41, and it and the first certificate of acknowledgment were effectual to show a waiver of the homestead right in said lands, and no correction of the instrument, either by the act of the mortgagors or the decree of a court of chancery, was necessary. In *Sharp* v. *Thompson*, 100 Ill. 447, this court said: "It is a rule of construction, that where there is a doubt as to the construction of a deed, it shall be taken most favorably for the grantee. Whence, if there are two descriptions in a deed of the land conveyed, and they do not coincide, the grantee is at liberty to elect that which is most favorable to him." Here, there were two and inconsistent descriptions of the lands, one locating them in "township forty," and the other locating them in "township 41." The mortgagee availed himself of the privilege given him by the law, and elected to take by the description of "township 41," and indicated such election by soliciting and procuring from the mortgagors the insertion of the word "one" in the mortgage, whereby the two descriptions were made to coincide, and to conform to the election so made. The amendment to the instrument was an unnecessary act, but it worked no detriment to the grantee, and was potent to show the parties of both parts understood and construed the deed as conveying lands in township 41, and when made, it related back to the original execution of the deed. The first acknowledgment being amply sufficient in respect to the waiver of homestead, a second certificate showing such waiver was wholly unnecessary, and the only effect of the second certificate of acknowledgment was to afford evidence the amendment in the deed was made with the knowledge and consent of the mortgagors.

A husband and wife had executed and acknowledged a mortgage intended to be on their homestead, but which, by mistake, was not properly described, and upon bill filed by the mortgagee, after the death of the husband, against his widow and minor children, a decree was rendered correcting the mistake, and ordering a foreclosure and a sale of the land in which was

the homestead. Thereafter, the widow and heirs filed a bill claiming a homestead in the premises,—and the latter case came before this court in *Snell* v. *Snell*, 123 Ill. 403, and the point was expressly made by counsel that the law places the householder and his wife under an absolute disability to convey the homestead, except in strict conformity with the statute. It was held the widow and children were bound by the former decree, and had no homestead in the premises; and in the opinion of the court it was said: "There was a simple, manifest mistake in the body of the deed, in describing the land. The homestead was formally released and waived, as required by the statute, and the only effect of correcting the error in the description of the property was to make the deed express just what the parties to it originally intended it should."

The deed here in question contained, when the waiver of homestead was made, a correct description of the premises in which was the homestead, while the deed involved in *Snell* v. *Snell*, contained no such description; and if the decree and acknowledgment, there, were a sufficient compliance with the requirement of the statute to be effectual to work a conveyance of the homestead, it is not perceived why the deed and acknowledgment and the correction made in the deed by the voluntary act of the parties themselves, that appear in this case, do not accomplish the same result. We think there was no error in the ruling of the court that the homestead of plaintiffs in error was released by the mortgage.

*Second*—Is Moses Casler estopped from denying that $4500 was due on the note and mortgage on the 23d of November, 1881? On the 10th of March, 1881, said Casler, and Divine, the mortgagee, made and signed an instrument in writing, which reads as follows:

"On settlement and adjustment of interest and other accounts and matters of deal between Moses Casler and R. L. Divine, this 10th day of March, A. D. 1881, it is found that there is or will be due to said Divine, on the 8th day of April,

A. D. 1881, the sum of $4855 on note and mortgage given to said Divine by said Casler on the 8th day of April, A. D. 1876, for the principal sum of $3350, drawing interest at ten per cent per annum, and that all other indebtedness from said Casler to said Divine is paid.

R. L. DIVINE,
MOSES CASLER."

On the 23d of November, 1881, the note and mortgage were overdue, and Divine had advertised the mortgaged lands for sale, under the power in the deed, and was about to sell the same. A few days before that, Casler had, in his extremity, called upon Byers, defendant in error, who lived on the adjoining farm, and requested his assistance. Byers was a man of property, but did not have the ready money to buy the mortgage. He told Casler that if he would reduce the mortgage to $4500, he would see what he could do. Byers then went to one B. D. Rowen, and tried to arrange with him to take the mortgage, and give Casler five years in which to pay the $4500, with interest at seven per cent per annum. Rowen was on the eve of starting for California, but said he would take the investment when he came back, if the security proved satisfactory. By arrangement between Byers and Rowen, the latter let the former have $4000 on his (Byer's) individual note, and agreed to pay the remaining $500 in the spring, if the security was satisfactory. Thereupon Byers borrowed, temporarily, the $500 from one Updike. Byers and Casler went, on November 23, 1881, to Divine's bank, in Sycamore, and there a settlement was made. Byers paid Divine the $4500, and Casler being unable to pay all the residue claimed by Divine as due, also advanced a further sum of $84.80, in order to complete the payment to Divine. The note of Casler for $3500 was indorsed by Divine "without recourse," and it and the mortgage and the writing of March 10, 1881, signed by Casler and Divine, were turned over to Byers. At the same time a written statement was, at the request of Byers,

drawn up by Divine and signed by Casler. It was then delivered to Byers, who, as it was expected Rowen would take the note and mortgage, carried it to Rowen, and the latter also attached his signature and returned it to Byers. That writing was as follows:

"This agreement, made the 23d day of November, A. D. 1881: Witnesseth: that the undersigned, B. D. Rowen, at the instance and request of said undersigned Moses Casler, has purchased of R. L. Divine a note for $3350, with interest at ten per cent per annum, dated April 8, 1876, and mortgage executed by said Casler and wife to secure the same, said mortgage covering certain lands in sections 8 and 9, in the town of South Grove, DeKalb county, Illinois; and whereas, there is now due on said note and mortgage the sum of $4500, neither more nor less, and the said Casler is desirous of procuring an extension of the time of payment thereof: Now, in consideration of the premises, said Rowen hereby stipulates and agrees to and with the said Casler that he will and does hereby extend the time of payment of said note and mortgage for five years from this date: *Provided,* that if default at any (time) be made in the prompt payment of the annual interest accruing on said note and mortgage, then said Rowen may at once resort to and exercise the power of sale contained in said mortgage, and may resort to any and all other lawful means to collect said debt, his assignee to have the same rights. The rate of interest on said note and mortgage from and after this date is to be seven per cent per annum.

*Nov. 23, 1881.*                    MOSES CASLER, [Seal.]
                                        B. D. ROWEN. [Seal.]"

Byers subsequently got $500 more from Rowen, to replace that amount borrowed from Updike, but he did not turn over the note and mortgage to Rowen, and, according to his testimony, he refrained from so doing for the reason Casler preferred he should keep them.

Plaintiffs in error introduced testimony, upon the hearing, tending to prove, that while the note secured by the mortgage was for $3350, the actual consideration thereof was only the sum of $2250, and also tending to show that Divine had collected some $1600 of rents accruing to Casler, with the understanding they should be applied upon the mortgage debt. The explanations made by Casler of his signing the two written instruments were, that he signed the paper of March 10, 1881, without reading it, not having his glasses with him, and being unable to read without glasses, and on the representation of Divine that it was a statement that their matters, other than the mortgage indebtedness, were settled up, and that he had no recollection of the paper signed by himself and Rowen. There is no doubt Casler, when he first called on Byers, wanted him to go his security in his proposed litigation with Divine to get "a right count," and made a claim there was $1000 too much put in the mortgage; but it is evident Byers gave no weight or credence to the suggestions and claims thus made. We think his subsequent conduct, in advancing $4500 for the purchase of the note and mortgage, was justified by the contents of the two papers signed by Casler that were placed in his possession at the time he paid the money. He borrowed the money at seven per cent interest, and turned it over to Casler at the same rate of interest. He assumed a personal liability and risk, and was acting solely from a benevolent desire to assist a neighbor in his distress. As matter of course, he did not understand he was making an arrangement whereby the sale would be stopped and Casler afforded an opportunity to contest the amount of the mortgage indebtedness. To so suppose would be to impute to him a degree of folly that is seldom found in a man who is capable of attending to his own business affairs. The evidence shows, that in the course of the dealings between Casler and Divine, Casler executed in favor of Divine some eight chattel mortgages, all of them given to secure considerable sums of money, and further, that the

latter recovered three judgments against the former; and we think there is a strong probability that the $1000 included in the deed was based upon some of these transactions, and that the rents collected by Divine were applied upon some of these evidences of indebtedness. The writing of the 10th of March, 1881, recites, "that all other indebtedness from said Casler to said Divine is paid."

These matters, however, are merely preliminary to the point in issue. Waiving all question in respect to the true amount due upon the note and mortgage, it is clear that, under the facts of the case, Moses Casler should be estopped from now claiming that there was not, on the 23d of November, 1881, and after deducting the payments then made by him, and the $84.80 loaned by Byers to scale down the debt to the amount agreed upon, the full sum of $4500 due upon the mortgage indebtedness. The doctrine of estoppel, as held in *The People* v. *Brown et al.* 67 Ill. 435, and in numerous other cases, is, that where a person, by his words or conduct, voluntarily causes another to believe in the existence of a certain state of things, and induces him to act upon that belief, so as to change his previous position, he will be estopped to aver against the latter a different state of things. We think that in this case all the essential elements to constitute an *estoppel in pais* appear. But even if we assume that fraud, or something tantamount thereto, is wanting, and that said Casler acted in good faith, and that $1000 too much was put in the mortgage, and that payments afterward made were not credited by Divine upon the indebtedness, yet it would seem to be a case, in view of the statements signed by Casler, for the application of the rule, that where one of two innocent persons must suffer loss from the wrongful act of a third party, he should bear the loss whose acts and conduct have given opportunity for the accomplishment of the wrong. It would be an outrage upon equity and good conscience, to allow Moses Casler, upon the facts developed by this record, to avail himself of his claim that all or

the greater part of the mortgage debt was settled with Divine prior to its transfer to defendant in error.

*Third*—It is insisted that Catherine M. Casler, wife of Moses Casler, had both an inchoate right of dower and a homestead right in the premises—that even if her husband was estopped, yet she was not a party to and had no knowledge of the matters which worked such estoppel, and that she having a right of equity of redemption, should have been allowed to redeem from the mortgage by paying the amount actually due thereon. The debt for which the note and mortgage were given was the debt of the husband alone, but she voluntarily joined in the execution of the mortgage deed, and, as a security for the payment of her husband's indebtedness, waived both her dower and her homestead rights.

*McCabe* v. *Raney,* 32 Ind. 309, was a suit against the principal and sureties on a promissory note, they being the joint makers thereof. The principal had, by his statements to the purchaser of the note that there was no defense to it, precluded himself from setting up a defense to the note, and it was held that his sureties were also precluded from making a defense, and the court said: "Any act of the principal which estops him from setting up a defense personal to himself, operates equally against his sureties."

This case of *McCabe* v. *Raney,* and the language above quoted, were cited with approval by this court in *City of Chicago* v. *Gage et al.* 95 Ill. 593, (on pages 629 and 630,) and the principle there announced is here exactly in point, and decisive against the contention now urged in behalf of Mrs. Casler. Besides this, Moses Casler was the owner in fee of the premises, and, jointly with his wife, had a homestead therein, and the mortgage was given to secure his personal debt, and she released her rights, as she lawfully might, for the payment of any part of the debt that should remain a valid indebtedness against him. The right to redeem, whoever has it, is the right to redeem the entire estate included in the mortgage, by

the payment of the whole debt due upon it, and the mortgagee is not obliged to take his pay by installments, or to release any specific portion of the estate on part payment. (2 Jones on Mortgages, sec. 1070; *Lamb* v. *Montague*, 112 Mass. 352.) It is probable that if a husband was guilty of intentional fraud as against the mortgaged rights of his wife, by an admission of indebtedness made in bad faith, for the purpose of affecting such rights, a court of equity would afford her relief; but there is in this record no intimation of such a state of case, and Mrs. Casler has not either filed a cross-bill asking affirmative relief, or claimed a separate and distinct defense in an answer, but has simply joined with her husband in answering the bill to foreclose. We think that Mrs. Casler, as well as her husband, is estopped from claiming less than $4500 was due on November 23, 1881.

*Fourth*—The remaining claim on the part of the plaintiffs in error is, that it was erroneous to allow a solicitor's fee of $500 for foreclosing the mortgage. The mortgage deed provided for a reasonable solicitor's fee, to be taxed as a part of the costs, if for any cause it became necessary to foreclose the mortgage by proceedings in court. It needs no argument to show that an attempt to foreclose, under the power of sale in the mortgage, would have been futile, and that it was necessary and proper to file a bill in chancery for that purpose. Although the suit was pending in the circuit courts only some eight months, and the questions involved were not particularly abstruse, yet a change of venue was taken by the plaintiffs in error to another county, and the right to foreclose was warmly contested on various grounds, and besides the time that was taken by the proceedings in open court, eight days were occupied in taking depositions before the master, and numerous exceptions were urged to his report, and a considerable amount of money was involved in the litigation. That which the contract called for was "a reasonable solicitor's fee." Two practicing attorneys at law were introduced by defendant in error

as witnesses, and testified in regard to the fee. One of them stated $500 was a reasonable fee, and the other that from $400 to $500 would be a reasonable fee. Plaintiffs in error cross-examined both of these witnesses, and had full opportunity to ascertain upon what basis they formed their opinions in respect to the amount of the fee, and to question them with reference to the usual and customary fees for like services, but failed to do so. No objections were made either to the questions propounded to said witnesses or to their answers thereto, and they produced no witnesses in contradiction. It is a question of fact, to be determined from the weight of the evidence, as to what is a reasonable solicitor's fee for the services performed in the case where the inquiry arises. Here, the master in chancery, the circuit court and the Appellate Court have all found from the evidence that $500 is a reasonable fee for the services rendered in this cause; and while we might have been better satisfied with the decree if a smaller fee had been fixed therein, yet we can not say, that under the evidence the findings in that behalf were manifestly erroneous, and the fee of $500 so excessive and oppressive as to justify a reversal by us on that ground. In *Reynolds* v. *McMillan,* 63 Ill. 46, the suit was amicable, and the rights of infants were involved; but here, plaintiffs in error were adults, and it must be presumed from their conduct they were content with the testimony on the question of a reasonable fee, as it stood.

We find in the record no sufficient ground for interfering with the decree of the circuit court, and it and the judgment of the Appellate Court are affirmed.

*Judgment affirmed.*