## Charles H. Denison v. A. J. Gambill, Adm'r, et al.

1. MORTGAGES—*Mistakes in Descriptions.*—In the absence of evidence to the contrary, the presumption is that a deceased mortgagor intended to mortgage lands which he owned, and so a description of lands in a mortgage as "Thirty acres in an L shape in the S. W. corner N. E. N. E. quarter in section twenty-one," is held to mean the west half and the southeast quarter of the northeast quarter of the northeast quarter of the section.

2. SAME—*Not a Negotiable Instrument.*—A mortgage is not a negotiable instrument, and can not be assigned so far as to deprive the mortgagor from interposing any defense to it, growing out of the contract of making it.

3. SAME—*Reformation of—Release of Homestead.*—Where a mortgage by which the homestead is released is corrected by a decree of court, for the purpose of explaining an ambiguity in the description of the premises, no further acknowledgment by the wife is necessary.

4. OBITER DICTA—*Defined.*—What is said in the opinion of a court in deciding a case that is unnecessary to have been said is *obiter dicta*.

**Bill to Reform and Foreclose a Mortgage.**—Trial in the Circuit Court of Williamson County; the Hon. OLIVER A. HARKER, Judge, presiding. Hearing and bill dismissed. Heard in this court at the August term, 1898. Reversed and remanded conditionally. Opinion filed March 10, 1899.

CLEMENS & WARDER, attorneys for appellant.

The right of a chancery court to correct an erroneous description in a mortgage, by a husband and wife, of the homestead, can not seriously be controverted since the de-

cision of Snell v. Snell, 123 Ill. 404, and Casler v. Byers, 129 Ill. 662.

W. W. DUNCAN, guardian *ad litem* for Bermia Gambill and attorney for other appellees.

The release and waiver of a homestead must be in writing and subscribed by the householder and his wife and acknowledged, etc. The fact that the release and waiver are in writing and subscribed and acknowledged is not enough. The conveyance itself must also be in writing and subscribed and acknowledged, as required by law, or it is void. Where the instrument or conveyance does not describe the lands in the homestead, but describes different lands, it can not be said that there is any conveyance of the homestead in writing and subscribed, and the fact that the parties intended to do so and that the failure was the result of a mistake, does not change the fact that a conveyance of the homestead in writing was not in fact made. A mistake in the release or waiver or conveyance or acknowledgment of the homestead right can not be reformed in equity. Stodalka et al. v. Novotny, 144 Ill. 125; Johnson v. Dunavan et al., 17 Ill. App. 59; Martin et al. v. Hargardine, 46 Ill. 323; Knox et ux. v. Brady, 74 Ill. 476; Rogers v. Higgins et al., 48 Ill. 211; Russell v. Rumsey et al., 35 Ill. 362.

MR. JUSTICE BIGELOW delivered the opinion of the court.

This was a bill in chancery, brought by appellant against appellees A. J. Gambill, administrator of the estate of John Gambill, deceased, Maggie Gambill and Bermia Gambill, to foreclose a mortgage executed by deceased and appellee Maggie Gambill, to one Lewis W. Moore, dated October 21, 1894, to secure their note to him for $783.87, due one year after date, with interest at seven per cent. The note was assigned to appellant. The lands are described in the mortgage as follows:

"Thirty acres, more or less, lying in 'L' shape in the southeast corner of the southeast fourth of the southeast

quarter; also thirty acres, more or less, in the northeast fourth of the northeast quarter; also ten acres in a square of the north half of the southeast fourth of the northeast quarter, all in section twenty-one (21), township eight (8), south, and in range three (3) east of the 3d P. M., situated in the County of Williamson, in the State of Illinois."

The bill was amended, alleging a mutual mistake in the mortgage in describing the "L shape" thirty acres of land, and asking that the mortgage be corrected, so as to show the land to be in the southwest corner of the southeast quarter of the northeast quarter of the section.

A guardian *ad litem* was appointed for the infant defendant Bermia Gambill, who answered setting up usury in the note, and that it was assigned for the purpose of defeating that defense; also setting up a claim of homestead in the premises and denying the power of the court to correct the mortgage. The other defendants answered that the assignment of the note to complainant was not *bona fide;* that much of it was for usurious interest, giving particulars, and that the premises were the homestead of defendant Maggie Gambill, and her child Bermia, and the mortgage was void. The cause was referred to the master, who took the evidence and reported it to the court, and upon a final hearing the court dismissed the bill at complainant's cost, and the complainant brings the case here, and assigns for error the decree dismissing the bill. In the absence of evidence to the contrary, the presumption would be, that the deceased mortgagor intended to mortgage lands which he owned, and, added to this presumption, is the testimony of defendant Maggie Gambill, his wife at the time the mortgage was executed, and who joined with him in the execution of it, and she testified that it was her understanding at the time of making the mortgage that they were mortgaging the land then owned by John M. Gambill, her husband, where they lived, and that he owned no other land.

The testimony of the defendant A. J. Gambill was, that he was acquainted with the land supposed to be in the mortgage, and that there was a mistake in the description of it;

that he was raised within three hundred yards of the land; that he has searched for the deed of it, but has been unable to find it and thinks it is lost.  When asked to describe John Gambill's entire land, his answer was:  "It is the S. E. N. E. ¼, and 30 acres in an L-shape, in the S. W. corner N. E. N. E. ¼, and in section 21, township 8, range 3."  This testimony, as well as the testimony of Maggie Gambill, is uncontradicted.  The lands then intended to have been embraced in the mortgage are:  The southeast quarter of the northeast quarter; also, the west half and the southeast quarter of the northeast quarter of said northeast quarter of section 21, in township 8 south, range 3 east of the 3d P. M.

The pleader in the amended bill has evidently made a mistake in placing the thirty acres "in an L shape," in the southwest corner of the southeast quarter instead of the northeast quarter of the quarter section, and since complainant has proven that the mortgagor owned none of the lands described in the amended bill, that can be found or located, unless it be the "thirty acres, more or less, in the northeast fourth of the northeast quarter" of the section or some portion of it, he has no reason to complain that his bill was dismissed.  Was he then entitled to a decree of foreclosure in respect to this thirty acres or any part of it?  No particular thirty acres of the forty-acre tract was described, and complainant had proved that the mortgagor never owned the northeast quarter of the tract, hence he could claim nothing in these ten acres, but could he claim relief against the entire thirty acres remaining?  Under the well known rule of construing deeds (and a mortgage is a deed), the mortgage must be construed to convey something, if such a construction is possible, and we think it is.  The mortgagor knew that he owned but thirty acres of the forty acres in the tract, and, rejecting the words "more or less" as meaningless, we are inclined to hold that the words of description in the mortgage mean the same as the words " my thirty acres," had they been used, would have meant; and since that is certain, which is, capable of being made certain, the particular thirty acres are found to be the west half and

the southeast quarter of the northeast quarter of the northeast quarter of the section. But if this construction is incorrect, then certainly the language should be construed as meaning an undivided thirty acres in the forty-acre tract, since the words of description can not be rejected altogether so long as they can be construed to mean something, and it is no answer to this construction to say that complainant had proven that the mortgagor never owned the northeast quarter of this forty-acre tract. It follows, then, that the bill should not have been dismissed because no land owned by the mortgagor was described in the mortgage. Why, then, did the chancellor dismiss it? It certainly could not have been because there was nothing due on the note, since if it was usurious (about which we express no opinion), that only destroyed the contract in the note to pay interest on it, and the actual consideration of the note was several times larger than the sum of all the payments made on it. Nor could the reason for dismissing the bill have been because the mortgagors, either in the body of the mortgage or in the acknowledgment of it, not waived or released their right of homestead in the mortgaged premises, since in that respect the mortgage is perfect. It follows, then, from what has already been said, that the court erred in dismissing the bill. Since the case will be remanded for a new trial, two other questions that have been adverted to, and at least one of them fully argued, demand our attention. One is, whether the assignment of the note and mortgage by the original mortgagee to the complainant before the maturity of the note prevents the defendants, or any of them, from interposing the defense of usury in this case, if the transaction is tainted with usury.

If there is any rule of law better settled in this State than any other, it is that a mortgage is not a negotiable instrument and can not be assigned, so far as to deprive the mortgagor from interposing any defense to it, growing out of the contract of making it. The authorities on this question are too numerous to require the citation of any of them, and all are one way.

Denison v. Gambill.

The other question, which has been elaborately argued, is, whether the complainant, under a proper bill and proofs, is entitled to have the mortgage corrected as to the description of the mortgaged property, and has the court power to correct it so as to make it speak the truth, as the parties intended?

We have already said that the mortgage is executed in strict compliance with the provisions of the homestead law, hence the evidence of the waiver of the right of homestead is not to be created anew but it already exists in writing, and was made through the acts of the mortgagors themselves; and the only thing left to inquire about and ascertain by a court of equity is whether the homestead right that was waived ought to be made to apply to the property which really constituted the homestead, and, if so, whether a court of chancery has the power to make it so apply. The latter question is the only one that now concerns us. We think this question was fully answered in the affirmative in Snell et al. v. Snell et al., 123 Ill. 404, and in Casler et al. v. Byers, 129 Ill. 657. A number of authorities are cited by counsel for appellees which are claimed to establish a different rule. All but one of them were decided before the case of Snell et al. v. Snell et al., *supra*, and are met and completely overcome by the learned and able opinion in that case. The case decided since the Snell case is Stodalka et al. v. Novotny, 144 Ill. 125. In that case Stodalka and wife, by written agreement, covenanted and agreed to convey to Novotny certain real estate, which was the homestead of the Stodalkas, upon certain conditions, but the agreement was not acknowledged and did not contain any covenant to release the homestead rights of the covenantors, and the Supreme Court held that a court of chancery had no power to reform the agreement and compel the covenantors to release their homestead rights when there was no written evidence that they had ever agreed to do so. There are, of course, some expressions in the opinion that seem to go further in support of the view taken by counsel for appellee in this case; but it must be remembered that what

is said in the opinion of a court in deciding a case that was unnecessary to have been said is *obiter dicta*.

If the premises had been worth no more than $1,000, and all of the consideration had been actually paid over to the Stodalkas, and they had used the money to pay other indebtedness, and without their homestead were insolvent, and under such circumstances had refused to perform their covenants, there would have been some analogy between that case and the case we are considering, though not enough to control this case, since here we have a release of homestead in the body of the instrument, and a proper acknowledgment of the release in the certificate of acknowledgment, both of which were lacking in that case. To go to the extent required to sustain the contention of appellee's counsel would, we fear, require us to disregard the rule that a statute ought not to be so construed or applied as to sanction the perpetration of a fraud.

For the error of the court in dismissing the bill, the decree is reversed and the cause remanded, with directions to the court to allow appellant to amend his bill and take further evidence, if so advised, but upon payment of all the costs in the Circuit Court, and in this court, within ninety days from this date, otherwise the decree will be affirmed.

Reversed and remanded conditionally.