## Henry S. Vail v. Northwestern Mutual Life Ins. Co.

92    655,
a192s 567

1. CONTRACTS—*Rule of Construction—Competency of Extrinsic Evidence—Application.*—The rule, that when from the whole instrument there is a doubt whether it was the intention to bind the principal or the agent, extrinsic evidence may be received to ascertain such intention, applies when the contract is made by the agent as such, and for the benefit of the principal, and not when it is made by one who, though he is an agent, makes it for himself as the principal.

2. SAME—*By Agents Within the Scope of Their Authority.*—Unless a contract is within the scope of an agent's authority, or by his conduct the principal has justified the belief in the existence of such authority, the mere fact that one of two contracting parties is an agent in some things for a third party, does not serve to make evidence of the intention of the contracting parties material, whether shown by the instrument itself or by extrinsic testimony.

3. ESTOPPEL—*By Declarations and Conduct.*—Where a party, by his declarations or conduct, willfully causes another to believe the existence of a certain state of things and influences him to act upon such belief, so as to alter his previous position, the former is precluded from averring against the latter a different state of things as existing at the same time.

4. SAME—*Declarations Must be of an Injurious Influence.*—The declarations of a party in order to constitute an estoppel must be those, the injurious influences of which might and ought to have been foreseen by the party making them.

5. NOTICE—*Statements in Contracts, Sufficient to Put a Party upon Inquiry.*—A party who enters into a contract with the general agents of an insurance company for the payment to him of renewal commissions upon business offered them, the fact that such contract itself states that the payment of such commissions is to be subject to the proviso that such agents or either of them should receive such commissions from the company, is of itself sufficient to put the party upon inquiry as to the conditions of the contract between the agents and their principal.

Assumpsit, for commissions, etc.—Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed January 15, 1901.

ARND & ARND, attorneys for appellant.

HOYNE, O'CONNOR & HOYNE, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellant sued to recover commissions upon renewals of insurance contracts obtained by him for appellee.

The suit is brought upon a contract, in the form of a proposition addressed to appellant and signed by " Dean & Payne, General Agents for Illinois," setting forth the terms and conditions upon which the said signors agree " to accept all desirable life insurance you may wish to offer the company during five years," etc. It is stated in the second clause that " the business is to be placed through us in the Northwestern Mutual Life Insurance Company, for which Messrs. Dean & Payne are agents, and to be approved and accepted by the company in Milwaukee." The instrument bears date January 2, 1888, and is accepted by appellee over his signature. It appears that the contract with the company, with Dean & Payne as general agents, expired August 31, 1894, a fact which it is said was not disclosed to appellant; and it is further stated that under the contract of Dean & Payne with the company the former were entitled to commissions on renewals of insurance contracts obtained by or through them only for the period of two years after the expiration of their contract. The contract with appellant now under consideration contains a provision that under certain specified conditions there shall be paid to appellant " a renewal commission of five per cent on ten renewals, as same are paid to the company, providing Dean & Payne, or either of them, receive said commission from said company." The company refused to renew or extend its contract with Dean & Payne which expired August 31, 1894, but appellant continued to receive commissions on renewals for two years thereafter from Dean & Payne until August 31, 1896, and after that time, until January 1, 1898, received them by mail from the company. Appellant sues to recover commissions accruing after that time for the remainder of the ten renewals for which he was to receive commissions under his contract with Dean & Payne, provided the latter should " receive said commission from said company."

It is first contended by appellant that the contract of

January 2, 1888, discloses an intention to bind appellee. If this should be conceded it does not appear how the contract could have that effect, unless the company in some sufficient way consented to be so bound. It is not claimed that the company was an actual party to the agreement. It is signed by Dean & Payne for themselves and does not purport to be the contract of the company, nor is there any evidence that Dean & Payne, as general agents, had authority to enter into such an agreement for and in the name of appellee. But the claim seems to be urged that inasmuch as the contract shows the insurance obtained by appellant was to be offered to the company, through its said general agents, and it is not specifically stated by whom the commissions upon renewals were to be allowed, it must be deemed "the intention of the parties" that such commissions should be allowed by the company. It is only necessary to say, however, that conceding for the sake of argument that such was the "intention of the parties" to the contract, those parties were Dean & Payne and appellant; and whatever may have been their intention they could not, by contracting between themselves, create a liability against appellee. Substantially the same conclusive answer must dispose of the claim that certain phraseology in the contract indicates that Dean & Payne executed the contract, not as individuals but in a "representative capacity," for appellee. The real question is, not what did Dean & Payne do, but what did appellee do? Had the contract expressly purported in unmistakable language to bind appellee as fully as appellant could desire, it would not have that effect unless appellee was a party thereto, or in some way authorized or adopted it. Authority to make it binding on appellee can not be proved by the mere language of a contract between other parties.

Reliance is had by appellant's counsel upon the case of King v. Handy, 2 Ill. App. 212, where it was said that "when from the whole instrument there is doubt whether it was the intention to bind the principal or the agent, courts have held that extrinsic evidence may be received to

ascertain the intention." This may be true when the contract is made by the agent as such, and for the benefit of the principal, but not when it is made by one who, though he is an agent, makes it for himself as the principal. There was no evidence offered in this case which tends to show authority in Dean & Payne to make a contract of this character for or in behalf of appellee, and the contract itself does not, in our judgment, purport to be so made. The fact that they were " general agents" of appellee to solicit life insurance in Chicago does not at all indicate that it was within the scope of their authority to bind appellee by any contracts they might make with sub-agents in their territory, any more than with clerks in their individual employ. Unless a contract is within the scope of an agent's authority, or by his conduct a principal has justified belief in the existence of such authority, the mere fact that one of two contracting parties is agent in some things for a third party does not serve to make evidence of the intention of the contracting parties material, whether shown by the instrument itself or by extrinsic testimony.

It is urged that appellee is equitably estopped from denying that it is liable to pay appellant the commissions specified, even if it be true that the contract in question was the contract of Dean & Payne alone, and not of the company. The argument is that as this contract of January 2, 1888, provided for payment to appellant of commissions on renewals, the last of which would not fall due until eleven years after appellant had placed his last policy under said contract, and as appellee's officers assented to and sanctioned the making of the contract with full knowledge of its provisions, without disclosing that the contract of Dean & Payne would expire August 31, 1894, one of appellee's officers writing to appellant that the contract seemed " to be within the terms of Dean & Payne's contract with this company," that appellant was thus led to believe Dean & Payne's contract with appellee was such as to secure payment of the commissions for the whole period; that thus appellant was led to work for years for Dean &

Vail v. Northwestern Mutual Life Ins. Co.

Payne while appellee received the benefit; and that now, having refused to renew or extend its contract with Dean & Payne, appellee retains for itself the renewal commissions which appellant earned and which the company induced him to believe he would receive as agreed between Dean & Payne and himself. In other words, appellant claims to have been made the victim of a "confidence game" by appellee.

Upon the whole we can not find that the facts justify such conclusion. It is clear that appellant did render valuable service to the company. Its officers frequently expressed their satisfaction at his success. It may be that in fairness appellee might and ought to pay him the remaining commissions on the said renewals. But the difficulty is it does not appear that he was misled by them. He made no effort, apparently, to ascertain what was the duration of Dean & Payne's contract. He does not claim to have inquired of appellee, and nothing indicates that appellee's officers knew or supposed him ignorant in that matter. At that time the company had not taken any action, so far as appears, looking either to renewal or refusal to renew its contract with Dean & Payne, which had nearly six years yet to run. It may very well be that the matter had not then been considered. Nothing seems to have been suppressed or concealed by appellee with a purpose to mislead appellant. There is not the slightest evidence of misrepresentation or intentional concealment. It may have been a mistake on appellant's part to neglect to ascertain to what extent Dean & Payne were in condition to assure him payment of these commissions for the full ten or eleven years during which they agreed to pay them. With the doctrine that "where one by his words or conduct willfully causes another to believe the existence of a certain state of things and influences him to act on that belief so as to alter his own previous position, the former is precluded from averring against the latter a different state of things as existing at the same time," we concur. (Hill v. Blackwelder, 113 Ill. 292; Casler v. Byers, 129 Ill. 657.) But as said in Knoebel

v. Kirchen, 33 Ill. 308, "a declaration, to constitute an estoppel, must be one the injurious influences of which might and ought to have been foreseen." There is no evidence here justifying the belief that appellee or its officers and agents willfully misled or imposed upon appellant in any way, or knew of his ignorance of anything bearing upon his action. The evidence shows they were legitimately seeking to increase their business, and they evidently believed the quantity of business obtained through their Illinois agency in charge of Dean & Payne would be increased if the latter made an arrangement mutually satisfactory with appellant. They appear to have encouraged and sought to bring about such an arrangement between the two parties, and that is all, so far as we can discover, that appellee by its own officers undertook or did. Appellant and Dean & Payne made their own contract. Appellee was not in any sense one of the contracting parties. The contract itself states that the payment of the renewal commission was subject to the proviso that "Dean & Payne, or either of them, receive said commission from said company." This of itself was enough to put appellant upon inquiry concerning the very matter which he now complains was not disclosed to him. Indeed, it indicates that he must then have known that contingencies might arise between appellee and Dean & Payne, which might prevent the latter from paying these commissions.

It is proven that appellee itself paid the commissions in controversy as they became due under appellant's contract with Dean & Payne for a period of one year and four months after the latter's connection with appellee had ceased. It does not appear for what reason appellee made these payments. It may have been in recognition of an apparent moral obligation. However that may be, no legal obligation existed under the evidence introduced, or that offered and ruled out by the Superior Court.

We find no error in the judgment, and it must be affirmed.