DENNIS POCKET *v.* GEORGE H. ALMON ET UX.

October Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed January 7, 1916.

*Statute of Frauds—Collateral Promise—Whether Necessary to Plead—Common-Law Rule—Chancery Rule—Oral Promise by Owner to Pay—Subcontractor—Whether Primary or Collateral—Evidence—Jury Question—Retention from Contract Price—Effect—Motion to Set Aside Verdict—Discretion of Trial Court—Admission of Evidence—Effect of Failure to Object—Contracts—Intent of Parties—Unexpressed Intention—Motion to Recall Jury After Separation to Ascertain Grounds of Verdict.*

The first section of our Statute of Frauds, P. S. 1576, requiring the promise to answer for the debt of another, etc., to be in writing, is available in defence under the general issue in assumpsit.

In chancery, where defendant admits an oral contract and says nothing about the Statute of Frauds, he waives the benefit thereof, but, where he does not admit the contract, he may avail himself of the Statute by objecting to oral evidence of the contract.

An oral promise by the owners to pay for work done on a house by a subcontractor is not within the Statute of Frauds where the promise is primary or original, and not secondary or collateral.

In assumpsit by a subcontractor against the owners to recover for the subcontractor's work on a house, his testimony that the owners orally promised him that, if he would go ahead with the work, they would see that he got his pay, *held* sufficient, in the circumstances, to support a finding that the promise created a primary liability, and not a collateral obligation within the Statute of Frauds, although he also gave testimony from which only a collateral promise could be found, as it was for the jury to determine which statement they would accept.

In the absence of an abuse of discretion the denial of a motion to set aside a verdict as against the weight of the evidence will not be reviewed.

Inadmissible evidence received without objection should be given its probative force.

Where the owner orally promises a subcontractor to pay him for work done by him on a house, if the principal contractor does not, and thereafter the owner withholds the amount due the subcontractor from the contract price paid the principal contractor, the oral promise is not within the Statute of Frauds, for the owner is in the position of one who holds property or funds of a debtor for application to a demand against him.

The charge in such a case, where defendants were husband and wife and the owners of the house, that, if the wife used language that led plaintiff to believe that she would be responsible for the continuance of plaintiff's work, and her husband ratified this, defendants would be liable if plaintiff did the work relying on this engagement, was erroneous, since defendants were not bound by plaintiff's understanding of the promise, however unwarranted or unreasonable, but only as plaintiff had a right to understand it, or as defendants expected he would understand it.

The action of the court in denying defendant's request to reassemble the jury after their separation, but before they were discharged, for the purpose of interrogating them as to the grounds of their verdict will not be reviewed, in the absence of an abuse of discretion.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by jury at the March Term, 1915, Washington County, *Stanton,* J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case.

*Theriault & Hunt* for the defendants.

*H. C. Shurtleff* for the plaintiff.

POWERS, J.  Almon let a job to Lacasse to build a house on a lot owned by the former and his wife. Lacasse sub-let the chimneys and plastering to the plaintiff at a lump sum. The plaintiff did the work called for by his contract with Lacasse. This action is general assumpsit to recover on account of that work, and the plea is the general issue.

When the plaintiff offered evidence tending to show an oral promise by the defendants to pay for the work, the defendants objected on the ground that the statute of frauds prevented a recovery on such an oral contract. To this objection, the plaintiff replied that the statute was not pleaded and therefore the benefit thereof was waived. The evidence was admitted, and the defendants excepted.

There is some conflict in the cases as to the necessity of pleading the statute in actions like this. But the common law rule was that the statute might be pleaded or availed of under the general issue, at the option of the party relying upon it. Perry, Pl. 250, n; Gould, VI, 53; 1 Chitty, *480; *Hotchkiss* v. *Ladd & Co.,* 36 Vt. 593, 86 Am. Dec. 679. This rule is adhered to by most of the courts in this country, as is shown by the note to *Owen* v. *Riddle,* Ann. Cas. 1912 D, 45, where the cases will be found collected. The conflict that may be thought to exist in our own cases on this general subject will, upon examination, turn out to be more apparent than real. At common law, the rule in chancery differed from that at law. This difference grew out of the special character of the pleadings in chancery,—it is said. *Feeney* v. *Howard,* 79 Cal. 525, 21 Pac. 984, 4 L. R. A. 826, 12 Am. St. Rep. 162. Though some inaccuracy of expression may be found in some of our cases, we have adhered to common law rules and distinctions. Thus in *Hotchkiss* v. *Ladd & Co., supra,* an action at law, the common law rule above stated was approved and applied. Our other cases, *Adams* v. *Patrick,* 30 Vt. 516;

*Howe* v. *Chesley,* 56 Vt. 727; *Battell* v. *Matot,* 58 Vt. 271, 5 Atl. 479; *Chickering* v. *Brooks,* 61 Vt. 554, 18 Atl. 144, and *Cunningham* v. *Blanchard,* 85 Vt. 494, 83 Atl. 469, are all in chancery. The Battell case and the Chickering case, taken together, express our rule in chancery. In the former, it was held that when a defendant admits the contract, and says nothing about the statute, he waives the benefit of it; in the latter, that when he does not admit the contract, he may avail himself of the statute by objecting to oral evidence of it.

So in actions at law, when the contract is denied, the benefit of the statute is available without a special plea.

Moreover, there is much good sense in the doctrine adopted in several jurisdictions that where (as here) the declaration is in the common counts, or in some other form which does not disclose the real nature of the claim sued on, the statute may be availed of, though not pleaded. *Hunter* v. *Randall,* 62 Me. 423, 16 Am. Rep. 490; *Boston Duck Co.* v. *Dewey,* 72 Mass. 446; *Beard* v. *Converse,* 84 Ill. 512; *Fanger* v. *Caspary,* 87 App. Div. 417, 84 N. Y. S. 410; *Taylor* v. *Howard,* 70 Wash. 217, 126 Pac. 423.

The defendants insist that, not only was the evidence inadmissible, but the agreement shown by it is unenforceable on account of the statute. This question was raised in various ways. There is little difficulty in stating the general rule applicable to such cases. So far as present necessity goes, it is that the oral promise is enforceable if it is primary and not secondary,— original and not collateral. The application of this rule to a given case is a matter of some difficulty. One reason for this is the fact that the attending circumstances are of importance and must be considered. So it happens that the actual language used may in one combination of circumstances import a primary undertaking, though in others it may import a collateral engagement.

There is much support in the record of the defendants' contention that the case made is that of a collateral promise, which being in parol can not afford the basis of a recovery. The attending circumstances are strongly corroborative of this conclusion. Nevertheless, we cannot say that there was no evidence fairly and reasonably tending to show an original undertaking on the part of these defendants. The plaintiff gave evidence to the effect that after he made his trade with Lacasse, but before he began

the work, he went to Mrs. Almon and refused to go on with the work unless his pay was assured; that thereupon, Mrs. Almon said to him that if he would go ahead with the work, they would see that he got his pay; that Mr. Almon afterwards ratified this; and that he did the work in reliance upon this promise. In the circumstances, the language used tended to make out a primary liability on the part of the defendants. For, though the words used by Mrs. Almon ordinarily import a collateral agreement, the circumstances were such that the plaintiff had a right to and did understand that his was directly chargeable to the defendants. *Arbuckle* v. *Hawks,* 20 Vt. 538; *Bushee* v. *Allen,* 31 Vt. 631; *Whitman* v. *Bryant,* 49 Vt. 512; *Greene* v. *Burton,* 59 Vt. 423, 10 Atl. 575.

If it be true, as claimed, that the plaintiff, himself, also gave testimony from which a collateral promise, only, could be found, it does not neutralize the effect of this evidence. It only makes a jury question of it, and leaves it for them to say which statement they would accept.

This Court cannot weigh the evidence or review the discretionary ruling on the motion to set aside the verdict. To do the former would be to invade the province of the jury; and to do the latter, would be to invade the province of the trial court, —since it is not clear enough so we can say there was an abuse of discretion.

There is another feature of the case which should be considered in this connection: The plaintiff testified that at some time after the work was completed, Lacasse told him that Almon had taken the amount due the plaintiff out of what was due him, Lacasse. This testimony was not objected to; indeed it was brought out by the defendants' counsel. It was, therefore, for consideration by the jury. *Taplin & Rowell* v. *Harris,* 88 Vt. 15, 90 Atl. 956. The fact which this evidence tended to establish was not controverted. The transcript does not show that it was anywhere denied. If believed, the evidence made the defendants' contract binding and enforceable. Even if when made the undertaking of the defendants was conditional, the condition having been fulfilled, the promise becomes binding. The defendants then stood in the position of one who holds property or funds of a debtor for application to a demand against him; in which case, his promise to pay is not within the statute. Brown, Frauds, §187. ''A promise to pay another man's debt out of that other

man's own funds, when they shall come to the hands of the person promising, is not within the statute of frauds.'' *Williams* v. *Little & Co.,* 35 Vt. 323; *Merrill* v. *Englesby,* 28 Vt. 150; *Wait* v. *Wait's Exr.,* 28 Vt. 350; *Fullam* v. *Adams,* 37 Vt. 391; *Bailey* v. *Bailey,* 56 Vt. 398.

The court charged the jury to the effect that if Mrs. Almon used language that led the plaintiff to believe that she would be responsible for the continuance of the work, and Mr. Almon ratified this, the defendants would be liable if the plaintiff did the work relying upon this engagement. To this instruction the defendants excepted.

The instruction was fatally defective. It omitted any reference to Mrs. Almon's intention in making the statement referred to; and it omitted any reference to what the plaintiff had a right to understand from it. Mrs. Almon's language is to be construed as the plaintiff had a right to understand it, or as she expected him to understand it. *Gunnison* v. *Bancroft,* 11 Vt. 490; *Rowell* v. *Lewis,* 72 Vt. 163, 47 Atl. 783; *Taplin & Rowell* v. *Clark,* 89 Vt. 226, 95 Atl. 491. To this extent, Mrs. Almon was bound by her statement, whatever it was. But not beyond this. The instruction made the plaintiff's understanding, no matter how unwarranted or unreasonable, the sole test of its binding force. This was error.

The defendants moved to set aside the verdict, and, after the jurors had separated but before they were discharged, asked the court to call them together and interrogate them regarding the grounds of their verdict, insisting that such investigation would disclose that they had misconceived and misapprehended the case. This the court declined to do, and the defendants excepted. This application was addressed to the sound discretion of the court and that discretion was wisely exercised, we have no doubt. ''If the state of the case is such,'' says Chief Judge Poland in *Sheldon* v. *Perkins,* 37 Vt. 550, ''as to make it proper or important to know the ground upon which a verdict of the jury is given, the proper course is to suggest it to the court so that it may be learned from the jury in open court, while they are together and under the control and direction of the court.'' The circumstances of this case are not sufficiently dissimilar to render this language inapplicable. It would be sanctioning a highly hazardous practice to say that jurors, after they had separated and had an opportunity to mingle with others, and perhaps hear their verdict

criticised or condemned, should be re-assembled and inquired of as to how they reached their conclusions.    This exception is without merit.

*Judgment reversed and cause remanded.*