FITZGERALD BROS. BREWING CO. *v.* JAMES A. KELLEY'S ESTATE.

Special Term at Rutland, November, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, J.J.

Opinion filed November 11, 1918.

*Motion for Directed Verdict—Intoxicating Liquors—Illegal Sale —Original or Collateral Promise—Sale by Unlicensed Agent —Validity—Action for Price—Question for Jury.*

The merits of a motion for a directed verdict depend upon the view of the evidence most favorable to the opposing party.

In a suit to recover from the estate of K. on an original promise by him in his life time to pay for certain intoxicating liquors sold and delivered to S., and defended on the ground that the liquors were sold to K. unlawfully, where the evidence was not so unequivocal as to afford the basis of but a single inference, the question whether the sales were to S. on K.'s credit, or to K. personally, was for the jury.

In such case, the question whether K.'s promise to pay for the liquors was original or collateral was for the jury.

Failure of a soliciting agent of a fourth-class licensee to comply with G. L. 6490, 6491, requiring certification, does not make sales of intoxicating liquor solicited by him illegal. The statute penalizes the solicitor, but not the sale.

Arrangement by plaintiff, fourth-class licensee, whereby only a part of the liquors billed to S., a seventh-class licensee, was to be sold and paid for under his license, and the remainder was to be kept in cold storage by him and delivered by him with a team provided

by plaintiff to other customers of the plaintiff on notice by it, and for which the plaintiff itself was to collect the pay and give S. credit for the same, was not illegal and in violation of G. L. 6490 if *bona fide* and not designed as a cover for illegal sales by S.

In such case, the true intent of the arrangement was a question for the jury.

APPEAL from the allowance by the commissioners on the estate of James A. Kelley of a claim presented by Fitzgerald Brothers Brewing Co. Declaration, contract on the common counts. Plea, the general issue. Trial by jury at the September Term, 1916, Rutland County, *Butler, J.*, presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*George W. Platt* and *Lawrence, Lawrence & Stafford* for the defendant.

*Marvelle C. Webber* for the plaintiff.

TAYLOR, J. The plaintiff is a New York corporation engaged in manufacturing and bottling ales, porter, and lager beer at Troy, New York. During the years 1913, 1914, and 1915, it had a license to conduct a wholesale liquor business in this State. It claims to recover from the estate of James A. Kelley on an original promise by him in his lifetime to pay for certain intoxicating liquors sold and delivered to one Thomas Smith, who had a license of the seventh class to do business in the city of Rutland in 1914 and 1915. The claim specified is an unpaid balance due for liquors purchased by Smith between February 22 and May 1, 1915. There was trial by jury with verdict and judgment for the plaintiff. The only questions presented arise on exceptions to the overruling of defendant's motion for a directed verdict.

No claim is made that the goods sued for were not delivered, nor that the balance claimed has been paid. It is contended that the plaintiff cannot recover because the liquors were sold to Kelley, or to Kelley and one Rafferty, unlawfully. Plaintiff's license, which was of the fourth class, gave it the right to sell intoxicating liquors by wholesale to licensees only. Kelley held a second-class license under which he conducted business in the

Bardwell House block. · The business carried on under the seventh-class license held by Smith was conducted at the "cold storage plant," as it was called at the trial. The defendant's claim was that this license, though issued to Smith, was in fact Kelley's, and that the business at the "cold storage" was owned by Kelley or by Kelley and Rafferty; that Smith was a mere servant and had no interest in the business; that, though the goods were shipped and charged to Smith, they were in fact sold to Kelley personally and not to Smith on Kelley's credit; and that the plaintiff knew these facts when it sold and shipped the liquors sued for.

It may be conceded that, if the plaintiff's dealings with the "cold storage" were with Kelley, or Kelley and Rafferty, personally knowing that Smith entered into the transaction only in name to give it color of legality, the form of the transaction would not save the plaintiff from the consequence of an unauthorized sale. See *Garrett-William Company* v. *Watkins,* 84 Vt. 299, 79 Atl. 387 Ann. Cas. 1913 A, 846. And it must be conceded that some of the evidence strongly tended to support the defendant's claim; but on a motion for a directed verdict the merits of the motion depend upon the view of the evidence most favorable to the opposing party—a fact too often ignored in presenting such motions for review.

The evidence in point was somewhat conflicting, and it cannot be said that it was so unequivocal as to afford the basis of but a single inference. Considered in the proper views, it fails to disclose any manifest illegality in the transaction involving the plaintiff; nor does it make the inference necessary that the plaintiff was party to an attempt to evade the law. Rafferty, called as a witness by the plaintiff, gave evidence partly in direct and partly in cross-examination tending to show that the "cold storage" business was really the business of himself and Kelley; that Smith worked for them on a salary and had nothing to do with the business except in name; that he heard Kelley telephone Thomas Fitzgerald, the plaintiff's vice-president and treasurer, respecting the "cold storage," and heard him say to Fitzgerald something to the effect that the "cold storage" license was his; that Smith meant Kelley; that he thought his name was mentioned; and that Kelley said the "cold storage" deal would be with Kelley and Rafferty. Fitzgerald, who it appeared represented the plaintiff in the negotiations with Kelley respecting the

business at the ''cold storage,'' testified in direct examination in substance that his first talk with Kelley was by telephone, in which Kelley informed him that a seventh-class license had been granted to Thomas Smith to do business at the ''cold storage'' in Rutland and requested him to come to Rutland to make arrangements for supplying the ''cold storage'' with ale, lager, and bottled beer; that he asked who Smith was, and was told, ''He is a friend of ours up here and is all right''; that Kelley said the transaction would involve considerable credit, as the goods were to be shipped in carload lots; that soon after witness came to Rutland, saw Kelley at his house, had a long talk with him about the manner of doing business at the ''cold storage,'' including how the goods were to be shipped and how they were to be distributed to licensees; that Kelley gave orders for two carloads of beer to be shipped to Smith about April 30, 1914, and said that he (Kelley) would pay the bill; that the arrangements then made were to continue during the period of the license held by Smith, and Kelley said he would pay for goods sold to Smith during that time; that the goods then and subsequently ordered were shipped to Smith and charged to him on the books of the company; that it was arranged that witness should come to Rutland at regular intervals to settle the ''cold storage'' accounts with Kelley; that the account was settled in full up to February 20, 1915, Kelley making all the payments on Smith's account; and that he relied on Kelley to pay when he sold the goods.

In cross-examination Fitzgerald testified that he didn't regard Smith as principal in the business, understood from the start that Kelley was the principal, and afterwards thought he discovered that Rafferty had some interest; that he didn't remember of Kelley's telling him that Smith was going to have a license, but that it was really his and Rafferty's; said there may have been such a talk, but did not remember it; that he supposed he had a perfect right under his license to sell to either Kelley or Smith, as Kelley was himself a licensee; that he charged the goods to Smith at Kelley's request; that Kelley wanted the shipments to the ''cold storage'' to be in Smith's name as he had the license.

Later, he testified that all that Kelley said on the subject was that he wanted the goods charged to Smith; that Kelley told witness to ship the goods to Smith and he (Kelley) would pay for them.

The evidence made it a jury question whether the sales were to Smith on Kelley's credit, or to Kelley personally. If the sales were to Smith, it is not claimed that the transaction was unlawful, except in respect of certain matters to be considered later. It is also urged in support of the motion that, if Kelley was not the purchaser of the goods, his promise was collateral and unenforceable because not in writing. But the evidence was at least sufficient to make it a jury question whether Kelley's promise was original or collateral. Taking Fitzgerald's version of the oral agreement, it was clearly original, unless the import of the language used was affected by the attending circumstances. See *Pocket* v. *Almon,* 90 Vt. 10, 96 Atl. 421.

As a further ground of the motion, the defendant says the plaintiff cannot recover because Fitzgerald did not have an agent's certificate authorizing him to solicit business for the company in this State as required by what is now G. L. 6490, 6491. The point is inadequately briefed, but we infer that the claim is that the failure of such soliciting agents to comply with the statute requiring certification makes sales solicited by them illegal. But such is not the purpose and effect of that statute. It penalizes the solicitor, but not the sale. In thus disposing of the question, we do not intimate that the evidence disclosed a situation that required Fitzgerald to secure a certificate for his protection. Besides, in any event, the question was for the jury whether Fitzgerald took orders for the liquors involved in the suit in Rutland. There was evidence tending to show that the orders were received in Troy, either by letter or telephone.

Finally, the defendant says that the plaintiff cannot recover because, in connection with the goods for which recovery is sought, other goods were sold knowing that they were to be disposed of unlawfully. The claim is that the arrangement for such unlawful sales was a part of the contract whereby Kelley agreed to pay for the goods sued for; and that the goods intended for unlawful disposal were so mingled with those sold to Smith for lawful use, and the dealings betwen the parties so conducted, that the whole transaction was rendered illegal. The consideration of this ground of the motion makes it necessary to refer to an additional feature of the original arrangement. It appeared that the plaintiff had several customers in Rutland among the licensed liquor dealers; that one Kelliher was its duly certified soliciting agent in that vicinity, and that the preserva-

tion of its goods required that they be kept in a cool place. Certain of the evidence tended to show that to provide suitable storage and to facilitate deliveries to its customers, it was arranged that a stock of liquors should be kept on hand at the "cold storage." They were of the same kind as those required by Smith, were shipped in carload lots, and for convenience were charged to Smith's "cold storage" account. The plaintiff paid part of the rent of the storage plant and provided a team for making deliveries. Kelliher would take orders from plaintiff's customers and turn them over to Smith for delivery. Smith's account would be credited with the liquors thus delivered and fifty cents a barrel for delivery. The collections for all liquors thus disposed of were made by the plaintiff through its Troy office. The balance sued for was for liquors which Smith had disposed of lawfully to his customers. Briefly, the arrangement, according to the plaintiff's claim was this: Certain kinds of intoxicating liquors were to be shipped to the "cold storage" plant, part of which was for sale by Smith under his license and part for storage and delivery to the plaintiff's other customers. All of the goods were to be billed to Smith, but Kelley was to pay for only such as Smith sold under his license. Kelliher was to take orders from plaintiff's customers and notify Smith, who was to make the deliveries out of the goods in storage, receiving fifty cents a barrel therefor. The goods so delivered were to be credited to the "cold storage" account, and the plaintiff was to make the collections from its customers. This arrangement, if *bona fide* and not designed as a cover for illegal sales by Smith, would not give color to the defendant's claim. The true intent of the arrangement was for the jury. It is said that such an arrangement is expressly prohibited, and we are referred to No. 179, Acts of 1910, Sec. 3, which provides, among other things, that no person holding a license of any class shall be appointed an agent of a licensee of the fourth class. But this provision relates to the appointment of soliciting agents. Such service for a wholesale liquor dealer by a licensee, as the evidence tends to show was thus performed by Smith, is nowhere forbidden. We hold that the case was for the jury, and that the motion was properly overruled.

*Judgment affirmed, to be certified to the probate court.*