CLARA E. PLATT, ADMX. *v.* CHARLES A. SHIELDS AND DAVID S.
CONANT.

November Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 4, 1923.

*Appeal and Error—Record—Docket Entries—Errors Not
Briefed—County Court—Hearings and Judgments in Vaca-
tion—When by Only One Judge—Meaning of "Disquali-
fied" as Used in G. L. 1603—Findings of Fact—Signing of
Findings—Exceptions Too General—Findings Sustained—
Harmless Error—Compensation to Which Attorney Is En-
titled—Matters for Consideration to Determine Reasonable-
ness—Question of Fact—Exception to Finding As Against
Evidence Governed by Same Rule As Refusal to Set Aside
Verdict As Against the Evidence, or As Excessive—Rules
Governing Supreme Court's Consideration of Exception to
Trial Court's Failure to Set Aside a Verdict on Motion—
Standing of a Court's Findings of Fact—Evidence—Error
to Admit Opinion of Expert Not Based on Facts in Evidence
—When Reception of Improper Evidence Not Treated As
Error — Presumption — Letters—Harmless Error—Admis-
sion of Letter From Attorney to Client to Show Attorney's
Knowledge of Facts Stated Therein—Judgment—Correction
by Supreme Court of Error in Amount.*

1. Where the record fails to show the terms of a judgment to which
   exception has been taken, the Supreme Court may refer to the
   docket entries for the information.

2. A suggested error which is neither briefed nor relied upon by the
   excepting party will not be considered by the Supreme Court.

3. G. L. 1607, providing that the county court may, in vacation, hear
   and render judgment in a cause wherein a jury trial is waived,
   contemplates action by a quorum of that body, not by a single
   judge; and, while G. L. 1608 authorizes action in such case by
   a single judge, such judge must be the superior judge who
   presided at the last stated term, unless by agreement of the

parties as provided in G. L. 1610, hence another superior judge who presided at a particular trial because of the disqualification of the presiding judge for the term was not authorized thereby to render judgment therein alone in vacation.

4.  The term "disqualified" as used in G. L. 1603, which provides that one judge of the county court may try and determine a cause pending in that court, when the other judges are disqualified, has a broader meaning than the ordinary meaning of one who has become divested of legal capacity to act as a court or juror by reason of interest or relationship, as shown by the legislative history of the provision, from which it appears that the conditions granting the authority of a single judge of the county court to act have been extended, until they now embrace any disqualification, whether one recognized by law or not; and where the presiding superior judge of a term of a county court and one of its assistant judges were disqualified, and a case was heard by another superior judge presiding for the particular case and the other assistant judge, but before the facts were found and judgment rendered the latter judge deceased, the survivor had authority to determine the cause.

5.  The requirements of G. L. 2259, that when a county court case is tried by the court the facts shall be reduced to writing and signed by a majority of the members of the court applies only to ordinary court trials in term time or vacation, but has no application to trials by a single judge, and does not indirectly repeal G. L. 1603, authorizing one judge of the county court to try and determine a cause pending therein, when the other judges are disqualified.

6.  An exception to the failure of the court to find as requested in numerous, numbered requests, by reference to their number only, reserves nothing for review, and, under such an exception, it is not necessary for the appellate court to examine the requests to see if any one was properly denied, but the exception is too general to require any attention whatever.

7.  In such a general exception, a reference to the requests themselves does not save the exception, where only in one or two instances do they point out the reason requiring compliance therewith.

8.  Where it appeared from the evidence that plaintiff's son, who was a lawyer, urged the acceptance of an offer made by the defendant in settlement for the death of plaintiff's husband, both

when informed of the offer and at a conference with another attorney held at plaintiff's request, and that the acceptance thereof was constantly opposed by plaintiff's attorney, and the offer was subsequently declined, and there was some evidence from the plaintiff, herself, that he acted on his own judgment in so doing, an exception to the finding that plaintiff's attorney declined the offer acting on his own judgment is without merit.

9.  The finding of the court that it would have been proper for an attorney to charge a retainer, in addition to a *per diem* charge, for services rendered, and that a certain specified sum was a reasonable retainer, which sum when added to the amount of the services on the *per diem* basis was equal to the entire charge made for services, if error, was harmless, where the court also found that the total charge made, considering the services as a whole, without any attempt to place them on a *per diem* basis, was reasonable.

10.  A party is not prejudiced by a finding, to which he excepted as contrary to and unsupported by the evidence, which can be rejected without affecting the result.

11.  Where there was no agreement or statute affecting the compensation of an attorney, the law implies a promise to pay a reasonable sum. In determining what is a reasonable charge by an attorney to his client, the nature and importance of the business, the professional standing and attainments of the attorney, the usual prices charged for similar services by other lawyers in the same vicinity and in the same court, the amount of time and labor both physical and mental, involved, the importance of the matter, including the amount at stake, the results secured, the benefits accruing to the client, the contingency or certainty of compensation, and the responsibility assumed and carried, are all matters to be considered, and each given such weight as the trier thinks it is entitled to in the particular case, though no one of them is controlling.

12.  In determining the proper charge for an attorney to his client, the court may consider the evidence in the light of its own knowledge and experience in such matters.

13.  The question of a reasonable attorney's charge for services is, ordinarily, a question of fact.

14.  The question presented by an exception to a court's finding in a case where a jury was waived, that the charge of an attorney

for services was reasonable, on the ground that such finding was contrary to and unsupported by the evidence, is similar to that raised by an exception to the refusal of the trial court to set aside a verdict as against the evidence, or as excessive; where the rule is that such action is discretionary and not, ordinarily, reviewable.

15. On a motion to set aside a verdict either as against the evidence, or as excessive, the fact that the verdict has received the express approval of the trial court is strongly in its favor and inclines the appellate court against interfering with it, and although the Supreme Court is not powerless to act it will exercise its power only in exceptional cases.

16. The Supreme Court will reverse the trial court's refusal to set aside a verdict as against the evidence, only when the record shows that the trial court refused to exercise its discretion, or abused it.

17. The Supreme Court will exercise its power of revision with respect to a trial court's refusal to set aside a verdict as excessive, only when the award is manifestly and grossly excessive.

18. In the Supreme Court any doubt regarding the evidence will be resolved in favor of the verdict.

19. The grounds for setting aside a verdict, that it is against the evidence and because the damages are excessive, in fact involve only one question, for the amount of damages awarded is a finding of fact on that question, and a motion based upon the ground that the damages are excessive is, in essence, a motion to set aside the verdict as against the evidence on that subject, so that the rule governing the Supreme Court's consideration of such a motion is the same whichever ground is assigned.

20. The findings by the trial court, where a jury was waived, are not so conclusive as not to be subject to revision by the Supreme Court, but have the standing therein of a verdict expressly approved by the trial court.

21. The finding of a trial court where a jury was waived, that a charge by an attorney for services was reasonable, cannot be overturned in Supreme Court merely because the evidence preponderates against it.

22. In such a case, the Supreme Court cannot interfere with the finding made merely because the charge appears to the Court to be excessive, or because the Supreme Court would have reached a

different result had it been finding the facts, as the Court cannot turn the case upon its judgment of what the charge in such a case should be, although in the consideration of the charge the Court may make use of its general knowledge of the subject.

23. To justify the Supreme Court in sustaining an exception to the finding of the trial court that an attorney's charge was reasonable, on the ground that such finding was contrary to and unsupported by the evidence, it must appear from the record that the charge was grossly out of proportion to the services rendered, and that there was no reasonable basis therein for the findings made by the trial court.

24. On the question of whether there was error in the trial court's finding that an attorney's charge of $5,000.00 for services was reasonable, to which exception was taken on the ground that it was contrary to and unsupported by the evidence, *held* that the case failed to show that the court's finding was without reasonable foundation or that the charge was so excessive as to require a reversal of the judgment based on such finding.

25. It is error to admit the opinion of an expert based in whole or in part on facts the existence of which is not within the tendency of the evidence.

26. In cases tried by the court, without a jury, the reception of improper evidence is not treated as error, where the Supreme Court is satisfied from the record that no use of the evidence was made below.

27. Where the trial court, in a case in which a jury was waived, received the opinion of an expert, upon the promise that such testimony would not be considered by the court unless the hypothetical question asked the witness was sustained by the evidence, the Supreme Court will assume, the contrary not appearing, that the trial court did as it agreed.

28. On the question of the reasonable value of an attorney's services in recovering damages for the death of plaintiff's husband, a letter written by plaintiff to such attorney prior to the trial which said, in effect, that two other attorneys, one of whom had previously had charge of the case, and the other plaintiff's son who had also acted for her in the same matter, were ready to settle for a sum less than half of what was recovered, was admissible, where such a settlement was opposed and refused by

the attorney making the charge, acting on his own judgment; and if, in admitting letters from such other attorneys to the same effect, more was admitted than was allowable, the error was harmless.

29. On the question of the reasonable value of the attorney's services, a letter written by an attorney, since deceased, to his client, was admissible to show the attorney's knowledge of the matters therein referred to.

30. Where by inadvertence or clerical error the judgment below was that the defendants recover according to their specification in offset, the amount of which they had already been paid with the exception of one small item, the Supreme Court will of its own motion, correct the error as a *pro forma* reversal and render judgment for the correct amount, the defendants being allowed their costs as on affirmance.

ACTION OF CONTRACT. Pleas, the general issue and complaint in offset on book account. Trial by the court, during and subsequent to the June Term, 1921, Caledonia County, *Moulton,* J., presiding. Judgment for the defendants to recover on their plea in offset. The plaintiff excepted. The opinion states the case. *Reversed, pro forma, and judgment for the defendants for a reduced amount.*

*George L. Hunt* for the plaintiff.

*Stickney, Sargent & Skeels* for the defendants.

POWERS, J.    The plaintiff is the widow and administratrix of Frederick S. Platt, late of Rutland, who was an attorney of unusual ability and high standing, and also clerk of the district court for the District of Vermont. The defendants are the surviving members of the law firm of Dunnett, Shields & Conant, all of whom are recognized as attorneys of excellent character and standing. Especially is this true of the senior member of the firm, the late Alexander Dunnett, who was a lawyer of conspicuous ability and attainments—a fact of which the members of this court have abundant knowledge, and to which they attest with pleasure.

[1]    The controversy grows out of the following facts: Platt lost his life on December 10, 1918, in an accident which

occurred on the Boston & Maine Railroad, while it was being operated by the government. The plaintiff first placed her claim for damages in the care of H. Russell Platt, a brother of the deceased and a lawyer practicing in Chicago. Later, it was decided that a local attorney could handle the matter to better advantage, and the plaintiff employed Dunnett, Shields & Conant. This was on or about December 28, 1918, and from that time on, that firm had full charge and management of the claim. They brought an action in the district court against the Director General of Railroads, and all attempts at a settlement having failed, the case was brought to trial before a jury, and a verdict for the plaintiff for $23,500 was obtained. The defendant carried the case to the Circuit Court of Appeals, sitting in New York City, where the judgment on the verdict was, in due time, affirmed. Dunnett, Shields & Conant collected the judgment, deducted thereform the amount charged for their services and disbursements, and remitted the balance to the plaintiff. The charge for their services was $5,000. The plaintiff insists that this charge is unreasonable and excessive, and sues to recover the amount of the overcharge. The defendant answered by a general denial and a complaint in offset on book account, claiming thereunder the charges and disbursements so deducted from the avails of the judgment, and an item of 50 cents for cash paid out after the remittance to the plaintiff as aforesaid. The case stood for trial at the June Term, 1921, of the Caledonia county court, being there set to the jury by the plaintiff. Judge Wilson was regularly assigned to preside at that term, and Charles W. Thurber and Oscar C. Woodruff were the assistant judges. Judge Wilson was disqualified to sit in this case, and Judge Moulton was assigned to preside at the trial of it. Arrangements were so made that Judge Wilson and Judge Woodruff proceeded with a jury trial in the regular county court room at St. Johnsbury and Judge Moulton and Judge Thurber, sitting in another part of the building, entered upon the trial of this case, an agreement having been made that the whole case should be tried by the court. The jury trial ended on September 9. On that day, Judge Wilson directed that this case, then being tried as above stated, be entered "With court, Moulton, Presiding Judge," and then adjourned the term without day. The trial of this case continued until late in the afternoon of September 10, when the evi-

dence was completed. Thereafter, and before any consultation had been had between Judges Moulton and Thurber to determine upon the facts, the latter died. The plaintiff seasonably objected to the completion of the case by Judge Moulton, and this objection being overruled, excepted. Thereupon, Judge Moulton, acting alone, proceeded to find the facts, filed the same, and rendered judgment "for the defendants to recover upon their declaration in offset in accordance with their specification on file." We take the terms of this judgment from the docket entries, to which we may refer, since the record before us does not show them. *Brown* v. *Vermont Mutual Fire Ins. Co.*, 92 Vt. 272, 102 Atl. 1042.

[2] The plaintiff suggests that the whole procedure whereby two courts were at the same time being conducted, and each (as we shall see) acting as the county court of Caledonia County, was without warrant of law. But she does not brief this claim nor rely upon it. So, of course, we do not consider it, though we do not overlook its importance.

[3] We start our examination of this record, then, upon the assumption that the court before which this trial commenced was lawfully constituted and legally empowered to proceed to final judgment therewith. We will consider the exceptions saved in the order in which they are discussed in the plaintiff's brief. So far as the authority of the trial court is concerned, two questions are for consideration: (1) Could that court proceed after the adjournment of the term? and, (2) could Judge Moulton proceed after Judge Thurber's death? G. L. 1603 provides that one judge of the county court may try and determine a cause pending in that court when the other judges are disqualified. G. L. 1607 provides that the county court may, in vacation, hear and render judgment in a cause wherein a jury trial is waived. G. L. 1608 provides that such hearing may be held and such judgment rendered by the superior judge who presided at the last stated term, without the assistant judges, and that such judgment shall have the same effect as if rendered at the term. These are the only statutory provisions relied upon to support the authority of the court below to proceed as it did. As already suggested, it was all the time the county court that was acting— no new tribunal being created by the statute. *Thorworth* v. *Blanchard*, 87 Vt. 38, 87 Atl. 52, Ann. Cas. 1916 A, 1226. The

authority of the county court to try jury-waived cases in vacation
is fully provided for in G. L. 1607.   This section, however, con-
templates action by a quorum of that body, and does not, stand-
ing alone, authorize a single judge thereof to act.   G. L. 1608
does authorize action in such cases by a single judge, provided
he is the superior judge who presided at the last stated term.
None other is therein referred to, and it is only by force of G. L.
1610 that any other superior judge can act in such matters, and
then only by agreement of parties.   As applied to this case, sec-
tion 1608 refers to Judge Wilson, and not Judge Moulton; for
the former presided at the term, while the latter only presided at
this trial.

[4]   So far, then, as Judge Moulton's authority to proceed
alone is concerned, it must be found, if anywhere, in G. L. 1603,
and depends wholly upon the meaning of the word "disquali-
fied" as used therein.   Ordinarily, this term is used in the law
to characterize one who has become divested of legal capacity to
act as a court or juror by reason of interest or relationship.
*State* v. *Blair*, 53 Vt. 24.   But as used in this section of the
statutes it has a much broader meaning.   This is plainly indi-
cated by the legislative history of the provision.   It originated
in the act found on p. 4, Acts of 1801, wherein it was provided
that if two of the county court judges were interested in a case,
or related to either party within the fourth degree, or had been
of counsel for either party, the remaining judge could try the
case.   In 1813, a provision was added extending this authority
to a case from the trial of which the other two judges were neces-
sarily absent.   Acts 1813, p. 9.   An amendment was passed in
1822, but it does not affect the question here.   Acts 1822, p. 18.
Down to the adoption of the Revised Statutes in 1839, the law
stood in this way, and it was only the disqualifications enumer-
ated that counted.   As carried into the revision named (R. S.
Ch. 25, § 28) the provision read: "When the other judges are
legally disqualified to act * * *."   This language stood until
1880, when the provision became R. L. 797, and was made to
read, "Where the other judges are disqualified," etc.   It thus
appears that the conditions granting the authority of a single
judge of the county court to act have been, from time to time,
extended, until at last they embrace any disqualification,
whether one recognized by the law or not.   Even before the

word "legally" was dropped, it was said by this court in *State* v. *Blair, supra,* that it was the evident intention of the Legislature to provide a court that should be legally competent to try causes when the other members of the court were unable to participate; that physical disability was within the meaning of the expression "legally disqualified" as used in the statute; and that unless such construction was adopted, courts might have to suspend and begin all over. Nothing that was said in that case about what was there done by the presiding judge in the absence of both assistants was intended to limit or qualify the construction above indicated. We are fully satisfied of the soundness of the holding in that case, and think the doctrine of it is especially applicable to the situation presented in this case.

[5] Nor should so useful a provision of the law be nullified by an application of G. L. 2259, which provides that when a county court case is tried by the court, the facts shall be reduced to writing and signed by a majority of the members of the court. It cannot be that the Legislature intended to subvert a policy that had obtained for more than eighty years by so indirect a repeal of G. L. 1603. Obviously, the provision referred to applies only to ordinary court trials in term time or vacation, but has no application to trials by a single judge. The power to try the case and to render a valid judgment therein, of necessity involves the power to certify the facts found. We hold, then, that the death of Judge Thurber left this presiding judge with both his assistants disqualified, and that he was thereby lawfully empowered to finish the trial by finding the facts and rendering judgment thereon, as he did.

A draft of the findings having been submitted to counsel, the plaintiff seasonably filed 17 consecutively numbered requests for further findings. Some of these were complied with to her satisfaction. Others were denied. She thereupon excepted to the court's failure "to grant each of her requests * * * Nos. 1, 2, 3, 4, 5, 9, 10, 12, 14, 15 and 17, which said requests are hereby referred to and made a part hereof."

[6] Such a general exception reserves nothing for review. We recently held in *Rugg* v. *Degnan,* 96 Vt. 175, 118 Atl. 588, and again in *Morgan* v. *Gould, et al.,* 96 Vt. 275, 119 Atl. 517, that such an exception was unavailing if any one of the requests was properly denied. These holdings are predicated upon the

analogy between exceptions to the denial of requests to find facts. and exceptions to the refusal of requests to charge; and between exceptions to the findings as made and exceptions to the charge as given.  This appears from the case first cited, wherein reference on this point is made to *State* v. *Shaw*, 89 Vt. 121, 94 Atl. 434, L. R. A. 1915 F, 1087.  The analogy, however, carries one step farther than these cases go.  Under such an exception, it is not necessary for the appellate court to examine the requests to see if any one was properly denied.  The exception is too general to require any attention whatever.  While the rule is frequently stated in our cases in the form shown by those cited, the limitation therein specified is not essential to the integrity of the rule.  This court has repeatedly approved the rule without the qualification, and held that such exceptions are too general to require attention.  *Mahoney's Admr.* v. *Rutland R. Co.*, 81 Vt. 210, 69 Atl. 652; *Davis' Admx.* v. *Rutland R. Co.*, 82 Vt. 24, 71 Atl. 724; *In re Bean's Will*, 84 Vt. 452, 82 Atl. 734; *Usher* v. *Severance*, 86 Vt. 523, 86 Atl. 741; *Seeley* v. *Central Vermont Ry. Co.*, 88 Vt. 178, 92 Atl. 28; *Raymond's Admx.* v. *Rutland Ry. L. & P. Co.*, 90 Vt. 373, 98 Atl. 909; *Bristol* v. *Bristol R. Co.*, 91 Vt. 223, 100 Atl. 37; *Goodwin* v. *Barre Savings Bank & Trust Co.*, 91 Vt. 228, 100 Atl. 34; *Bradley* v. *Blandin*, 94 Vt. 243, 110 Atl. 309.

[7]   Nor does the reference to the requests save the exception, for only in one or two instances do they point out the reason requiring compliance therewith.

[8]   The plaintiff seasonably filed 13 exceptions to the findings.  Those numbered from 2 to 7, inclusive, and from 10 to 13, inclusive, are all predicated upon the ground that the findings to which they severally relate are contrary to and unsupported by the evidence.  They may be treated as of three classes:  Those based upon criticisms of the findings too trivial or unimportant to require discussion; those relating to findings so unquestionably supported by evidence as to require no special treatment; and those deserving examination and consideration.  Nos. 2, 3, 4, and 5 relate to a certain $10,000 offer of settlement, and fall into the first or second class above specified.  No. 6 challenges the finding that Mr. Dunnett declined an offer of $15,000 in settlement acting on his own judgment in so doing.  It appears that this offer was taken up at Rutland with a son of the plaintiff, a lawyer,

. who urged an acceptance of the offer. Dunnett was opposed to its acceptance. Thereupon, at the plaintiff's request, they went to the office of Attorney P. M. Meldon to get his advice on the question. At this interview, Dunnett expressed himself as opposed to a settlement on the offer. Platt favored it. The offer was subsequently rejected. Upon whose judgment, we may ask, did Dunnett act in declining this offer, if not his own? Aside from the circumstances and probabilities, all of which point one way, there was evidence from the plaintiff, herself, that he acted on his own judgment. For Mr. Meldon testified that he learned that or something of that kind from her. The exception is without merit.

[9, 10]   Nos. 7, 8, 9, 10, and 11 relate to certain findings bearing upon the value of the firm's services calculated upon a per diem basis. Ascertained in this way, the court below found the charge of $5,000 to be a reasonable one. In arriving at this result, the court found that it would have been proper for the firm to charge a retainer in the case, and that $500 would have been a reasonable charge therefor. And the court used this sum in addition to the *per diem* for services to reach the $5,000 found in this way. The exception to this finding was, not that it was unsupported by evidence, but that as matter of law an attorney is not entitled to a retainer in addition to compensation for services performed. But we need not take the time to examine this exception, for, if it was sustained, the error would be harmless; for the court also found that $5,000 was a reasonable charge considering the services as a whole without any attempt to place them on a *per diem* basis. So, unless there is some way to nullify or escape this finding, all the exceptions relating to the *per diem* value of the services go for nothing, since the finding thereon can be rejected without affecting the result. *Crampton* v. *Lamonda*, 95 Vt. 160, 114 Atl. 42.

[11]   Exceptions 12 and 13 call in question the finding above referred to that $5,000 as a lump sum was a reasonable charge. We note, in passing, that as once stated this finding is that it was not an unreasonable charge—but this amounts to the same thing. There being no agreement or statute affecting this question, the law implies a promise to pay a reasonable sum. However, it provides no fixed standard—no hard and fast rule by which a given charge can be tested, or the meaning of the rule when

expressed in money can be determined.    It was said in *Powell* v. *Foster's Estate,* 71 Vt. 160, 44 Atl. 96, in speaking of the services of an administrator, that reasonable compensation means such as will fairly compensate when the character, effectiveness, and ability entering into the service are considered.    But when applied to the professional services of an attorney, this does not adequately express the rule.    Various other factors are then for consideration.    The nature and importance of the business, the professional standing and attainments of the attorney, and the usual prices charged for similar services by other lawyers in the same vicinity and in the same court are important.    *Vilas* v. *Downer,* 21 Vt. 419.    Then, too, regard is to be had for the amount of time and labor—both physical and mental—involved, the importance of the matter, including the amount at stake, the result secured, and the benefits accruing to the client, the contingency or certainty of the compensation, and the responsibility assumed and carried.    All this is too elementary to require discussion—though reference may be had to *Goveman* v. *Banigan,* 22 R. I. 22, 46 Atl. 38, *Graham* v. *Dubuque Speciality Machine Works,* 138 Iowa 456, 114 N. W. 619, 15 L. R. A. (N. S.) 729, and note to *Cornelius* v. *Smith,* 9 A. L. R. 237.    No one of these considerations is controlling   They are all to be regarded, and each given such weight as the trier thinks it is entitled to in the particular case under consideration.

[12, 13]    A study of the record before us makes it plain that the trial court fully appreciated these requirements of the law.    Evidence was received, accordingly.    We have no doubt that this evidence was given attention with impartial patience, or that it was adequately considered in the light of the court's own knowledge of and experience in such matters—which it might well make use of (*Hirtzel* v. *Ball,* 205 Ill. App. 244), with the deliberate result embodied in the finding.    That the question of reasonable charge is, ordinarily, a question of fact is too apparent to be denied; and that there was evidence below fairly and reasonably tending to show that this charge was reasonable does not admit of dispute.    If, then, this exception is to avail anything, it must be because the finding is contrary to the evidence.

[14]    The question thus presented bears a strong resemblance to that raised by an exception to the refusal of the trial court to set aside a verdict as against the evidence—where the

rule is that such action is discretionary, and not ordinarily, reviewable. *Sowles* v. *Carr*, 69 Vt. 414, 38 Atl. 77; *Woodsville Guaranty Savings Bank* v. *Rogers*, 86 Vt. 121, 83 Atl. 537; *Howton* v. *E. A. Strout Farm Agency*, 90 Vt. 50, 96 Atl. 330; *Nichols* v. *Lane*, 93 Vt. 87, 106 Atl. 592. So, too, it is much like the question raised by an exception to the refusal of the trial court to set aside a verdict as excessive—where the rule is the same. *Sartwell* v. *Sowles*, 72 Vt. 270, 48 Atl. 11, 82 A. S. R. 943; *Barrette* v. *Carr*, 75 Vt. 425, 56 Atl. 93; *Raymond* v. *Sheldon's Estate*, 92 Vt. 396, 104 Atl. 106; *Dyer* v. *Lalor*, 94 Vt. 103, 109 Atl. 30.

[15-19]  In either case, the fact that the verdict has received the express approval of the trial court is strongly in its favor and inclines the appellate court against interfering with it. *Crafts* v. *Mechanics' Savings Bank* (R. I.), 102 Atl. 516; *Chatfield* v. *Bunnell*, 69 Conn. 511, 37 Atl. 1074; *Boucher* v. *Wisconsin Central Ry. Co.*, 141 Wis. 160, 123 N. W. 913; *Cleveland, etc., Ry. Co.* v. *Hadley*, 170 Ind. 204, 82 N. E. 1025, 84 N. E. 13, 16 L. R. A. (N. S.) 527, 16 Ann. Cas. 1; *Newton, Atty. Gen.,* v. *East River Gas Co.*, 259 U. S. 101, 66 L. ed. —, 42 Sup. Ct. 438. Nevertheless, that court is not powerless in the one case (*Tarbell* v. *Grand Trunk Ry. Co.*, 94 Vt. 449, 111 Atl. 567), or the other (*Parker* v. *Boston & Maine Railroad*, 84 Vt. 329, 79 Atl. 865), though it will exercise its power only in exceptional cases.  The rule governing the action of the reviewing court in cases of the first class is stated in various forms.  Some say that it will act only when the verdict is clearly and palpably against the great weight of the evidence; some say, only when the evidence is of such decisive character as to leave no reasonable doubt of the truth.  Our own rule is that this Court will reverse the trial court's refusal to set aside such a verdict only when the record shows that that court refused to exercise its discretion or abused it. *Lincoln* v. *Central Vermont Ry. Co.*, 82 Vt. 187, 72 Atl. 821, 137 A. S. R. 998, and cases cited; *Pocket* v. *Almon*, 90 Vt. 10, 96 Atl. 421; *Manley* v. *Boston & Maine Railroad*, 90 Vt. 218, 96 Atl. 674. So, too, with cases involving the question of excessive damages. This court will exercise its power of revision only when the award is manifestly and grossly excessive. *Barrett* v. *Carr*, 75 Vt. 425, 56 Atl. 93.  And any doubt regarding the weight of the evidence will be resolved in favor of the verdict. *Smith* v. *Mar-*

*tin,* 93 Vt. 111, 106 Atl. 666.    In what we have said regarding
these grounds for setting aside a verdict, we have treated them
as involving two separate questions.    In fact, they involve only
one.    The amount of damages awarded is, of course, nothing
more or less than a finding of fact on that question; and a motion
based upon the ground that the damages are excessive is, in
essence, a motion to set aside the verdict as against the evidence
on that subject.    The rule is the same, whichever ground is as-
signed.    *Lincoln* v. *Central Vermont Ry. Co., supra; Smith* v.
*Martin, supra.*

[20]    The finding under consideration, being made by the
same court that rendered the judgment, has here the standing of
the verdict of a jury expressly approved by the trial court—at
least.    Indeed, it has been repeatedly held by this Court that a
finding of fact made by a court sitting without a jury and based
upon conflicting evidence, was entitled to so much respect. that
it was not subject to exception or reviewable at all.    *Strong* v.
*Barnes,* 11 Vt. 221, 34 A. D. 684; *Kirby* v. *Mayo,* 13 Vt. 103;
*Cahoon* v. *Ellis,* 18 Vt. 500; *Emerson* v. *Bradley,* 18 Vt. 586;
*Emerson* v. *Young,* 18 Vt. 603; *Robinson* v. *Wilson,* 22 Vt. 35,
52 A. D. 77; *Wetherbee* v. *Ezekiel,* 25 Vt. 47.    While it was
said, without reference to any of these cases, in *Roberts* v. *Welch,*
46 Vt. 164, that such findings are, on exception, as conclusive as
if established by a verdict, it is apparent that this was not in-
tended as a change in the prevailing rule, for it was thereafter
said in *Murdock* v. *Hicks,* 50 Vt. 683, without qualification, that
such a finding is conclusive and not subject to revision by this
court.    See, also, *Crook* v. *Bradford,* 65 Vt. 513, 27 Atl. 118, and
*Johnson* v. *Paine,* 84 Vt. 84, 78 Atl. 732.    If it be assumed that
the above is a correct statement of the rule now prevailing, we
think the time has come when it should be departed from, and
that findings by the trial court should be given the standing in
this court of a verdict expressly approved by that court.    And
we think that, in consideration of the nature of the service here
involved, it is especially appropriate to make this case the occa-
sion of the change.

[21-23]    Under this rule, it is very plain that we cannot
overturn this finding merely because the evidence preponderates
against it; nor can we interfere with it merely because the charge
in question appears to us to be excessive.    It is not enough

that we should have reached a different result, had we been finding the facts. *Lincoln* v. *Central Vermont Ry. Co., supra; Dyer* v. *Lalor, supra.* We cannot turn the case upon our own judgment of what the charge in such a case should be, though in the consideration of it we may make use of our general knowledge of the subject. *Gilbert* v. *Lloyd,* 170 Ill. App. 436; *Dinkelspiel & Hart* v. *Pons,* 119 La. 236, 43 So. 1018. To justify this Court in sustaining this exception, it must appear to us from the record that this charge is grossly out of proportion to the service rendered when measured by the considerations named, and that there is no reasonable basis therein for the finding made by the trial court. This is the rule fairly deducible from the cases. *Barrette* v. *Carr,* 75 Vt. 425, 56 Atl. 93; *Suell* v. *Derricott,* 161 Ala. 529, 49 So. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; *Casler* v. *Byers,* 129 Ill. 657, 22 N. E. 507; *Gilbert* v. *Lloyd,* 170 Ill. App. 436; *Dempsey* v. *Dorrance,* 151 Mo. App. 429, 132 S. W. 33. See, also, *Terminal F. & H. Co.* v. *Whitelock,* 120 Md. 408, 87 Atl. 820; *Dinkelspiel & Hart* v. *Pons, supra.* If this case comes within this rule, it is our urgent duty to reverse the judgment—not only that the wrong may be righted, but that bench and bar may be left free from criticism or reflection for having approved an unconscionable charge for professional services.

[24] The courts recognize the delicacy of the question involved in determining the amount that an attorney may lawfully charge for his services. *Dinkelspiel & Hart* v. *Pons, supra.* As involved in the case before us, the question is both delicate and difficult. The charge in question was a very heavy one, as all must admit. But it was sustained by the testimony of several of the leading lawyers of the State—lawyers of unquestioned standing and integrity—and we cannot say that the whole case, when studied in the light of our own knowledge, and considering the recent advance in prices in every direction, including. attorney fees, of which there was evidence, shows that the court's finding was without reasonable foundation or that the charge is so excessive as to require a reversal of the judgment.

Exception 14 is based upon a misinterpretation of the finding to which it is addressed, and so requires no attention, and exception 15 is waived.

[25-27]    The only exception relating to the testimony of the expert witnesses that is of sufficient importance to require any discussion is the one saved to the question asked Judge Darling. Among the assumptions that this witness was asked to make as a basis of his answer was this: "That Mrs. Platt and her son George, who by her direction was to be consulted by Mr. Dunnett in matters, and talked with about the matter, wanted to accept $15,000 in settlement and was [were] overruled by Mr. Dunnett, and on his judgment and advice that amount was not accepted." This was objected to on the ground that it was unsustained by evidence. The court allowed it, saying in effect, that it was true that this had not appeared in evidence, and if it did not, he would pay no attention to the testimony. The plaintiff excepted. There was no evidence given that Mrs. Platt wanted to accept this offer, and was overruled by Mr. Dunnett. The law is as stated by the plaintiff: It is error to admit the opinion of an expert based in whole or in part on facts, the existence of which is not within the tendency of the evidence. *Lawson* v. *Crane,* 83 Vt. 115, 74 Atl. 641; *Clark* v. *Tudhope,* 89 Vt. 246, 95 Atl. 489. But in cases tried by the court, the reception of improper evidence is not treated as error if we are satisfied from the record that no use of it was made below. *Foster's Admr.* v. *Burton,* 62 Vt. 239, 20 Atl. 326; *Spaulding* v. *Albin,* 63 Vt. 148, 21 Atl. 530; *Walston* v. *Allen,* 82 Vt. 549, 74 Atl. 225. If the court here had certified that this testimony was not considered (*Foster's Admr.* v. *Burton, supra*), or if it appeared that it was stricken out (*Walston* v. *Allen, supra*), it would have been enough to so satisfy us. So, too, the promise of the court to disregard the testimony in the event named, should and does have the same effect. The contrary not appearing, we assume that the court did as it agreed to do. And the contrary does not appear—though the plaintiff claims it does.

[28]    Subject to the plaintiff's exception, certain letters were admitted to show, among other things, that Russell Platt thought that anything above $10,000 obtained by settlement, was so much clear gain, and that George Platt was of the same mind. That these facts were of importance and pertinent to the issue is apparent. In estimating the value of Mr. Dunnett's services, the fact that these two lawyers, one of whom had had charge of the claim, the other the plaintiff's son who had been acting in

her behalf, were ready to settle for the sum stated—less than half of what was recovered—had a direct and important bearing. The plaintiff's letter in which she says, in effect, that they did so think was admissible. If more was admitted than was allowable, it was wholly harmless.

[29] The letter written by Mr. Dunnett on January 4, 1919, was unquestionably admissible to show that he had knowledge of the matters therein referred to—the pertinency of which is not questioned. *McAuley* v. *Western Vt. R. Co.*, 33 Vt. 311, 78 A: D. 627; *Griffin* v. *Boston & Maine Railroad*, 87 Vt. 278, 89 Atl. 220.

[30] By inadvertence or clerical error the judgment below was, as hereinbefore stated, that the defendants recover according to their specification in offset. This would allow them to here recover their charges for services and disbursements, for which they have already had their pay. All they should recover, of course, is the one charge of 50 cents above referred to. This is so plain that this court will, of its own motion, correct the error on a *pro forma* reversal—the defendants being allowed their costs as on an affirmance, as in *Lassell* v. *Burton*, 16 Vt. 188.

*Judgment reversed, pro forma, and judgment for the defendants to recover 50 cents damages, with interest thereon from January 1, 1921, and costs.*