STELLA PUTNAM *v.* MRS. ALVIN A. WOODARD.

Special Term at Rutland, November,.1939.

Present: MOULTON, C. J., SHERBURNE, STURTEVANT and JEFFORDS, JJ., and BLACKMER, SUPR. J.

Opinion filed January 2, 1940.

*Stanley L. Chamberlin* and *Loren R. Pierce* for the plaintiff.

*Alban J. Parker* for the defendant.

MOULTON, C. J.   On June 16, 1911, the plaintiff's husband, E. S. Putnam, executed in duplicate a written contract whereby he agreed to sell a certain farm to Alvin A. Woodard, the husband of the defendant.   The receipt of a down payment was acknowledged, the balance of the purchase price to bear interest at 5% and to be payable in specified annual installments.   There were other provisions to the effect that Woodard should pay insurance and taxes, and that three-fourths of the gross proceeds of all wood and lumber sold off the farm should be applied upon the principal sum but not upon the interest, but these stipulations are not material because there is no claim of noncompliance with them.   Upon payment in accordance with the terms of the contract Putnam agreed to execute a warranty deed of the premises to Woodard, his heirs or assigns; but upon default Putnam might reenter and take possession.   On March 23, 1912, Putnam quitclaimed the premises to his son, who, on the same day, executed a like deed to the plaintiff, both deeds being expressly made subject to the contract.   Woodard took possession on the date of the contract and so remained until his death on November 27, 1931.   Since then the defendant, his administratrix, has occupied the premises.

This suit was brought to foreclose the contract of sale and regain possession of the farm, upon the ground that payment had not been made in accordance with the terms of the agreement.   The defense was that the purchase price had been paid, although no deed of the premises had been given.   Hearing was had before the Chancellor who found in accordance with the defendant's contention, dismissed the proceedings and decreed that the plaintiff should execute a warranty deed to the defendant as

administratrix of the estate of Alvin A. Woodard. The plaintiff appealed and filed a bill of exceptions.

The findings, to which exceptions are briefed on the ground that they are not supported by the evidence, are that a certain receipt signed by Putnam in November, 1929, was an acknowledgment of full payment of the amount due, and that prior to its execution Woodard had discharged the indebtedness under the contract. Under our well established rule these findings must stand if there is any legitimate evidence fairly and reasonably tending to support them, (*White River Chair Co.* v. *Conn. River Power Co.*, 105 Vt. 24, 35, 162 Atl. 859) and, if there is such evidence, the fact that there is other evidence in conflict with it will not avail to disturb them on appeal, for the weight of the evidence is for the trier of the facts to decide and all conflicts must be resolved against the excepting party. *Village of St. Johnsbury* v. *Cenedalla*, 109 Vt. 174, 181, 194 Atl. 382; *McClary* v. *Hubbard*, 97 Vt. 222, 242, 122 Atl. 469. We cannot overturn the findings merely because the evidence preponderates against them. *Platt, Admx.* v. *Shields & Conant*, 96 Vt. 257, 271, 119 Atl. 520.

The evidence here is conflicting. The accounts of the respective parties are in hopeless disagreement. The findings state that the "issue is complicated by the fact that the parties had dealings between themselves relating to matters other than this contract, and also by the fact that certain payments were made in wood and other commodities, and not in cash"; that Woodard's records had been very loosely kept, and in some respects were incomplete and inaccurate; that Putnam kept no books of account, and made no record of the payments other than indorsements on the back of his copy of the contract; that Woodard's copy, upon which he also had indorsed the payments, had been lost or destroyed; but that it is "more probable that payments were made on the contract substantially as claimed by the defendant, and that the plaintiff failed to indorse many of these payments on his copy of the contract."

The receipt, which the Chancellor, in his findings, states that he considers to be a very decisive piece of evidence supporting the defendant's contention, is the center of the controversy. It is earnestly submitted that it has been fraudulently tampered with. Although no testimony directly to this effect was offered,

it is argued that it conclusively appears that it has been intentionally defaced and therefore that it should not be treated as evidence fairly and reasonably tending to support the finding of payment.

This document is written in pencil upon a fragment of paper which seems to be a leaf torn out of a pocket note book, and is so badly blurred and discolored that much of its contents is illegible. At the top there can be read the words "Al Woodard home farm"; below this there are figures which are difficult to make out, but the last item appears to be "Nov. 15, 400"; next comes "recd Pay in full for home Farm," quite clearly; then two lines of the writing are indistinct, although the word "Promise" may be discerned; last of all is the name "E. S. Putnam."

There is, it is true, evidence which may be taken to throw doubt upon the genuineness of the document. Putnam testified that he knew nothing about it. One of the payments indorsed upon the back of his copy of the contract is set down as of a date later than that upon which the receipt was claimed to have been delivered. The receipt itself bears evidence that some of the words have been traced over in pencil. The plaintiff testified that the defendant, since the death of her husband, had asked to be allowed to stay on the farm, saying that she knew that she could be put out of possession. Other circumstances urged in argument need not be mentioned in detail.

But, on the other hand, Putnam testified that the figures were his, and that he thought that the words at the top of the paper, those following the figures, and the signature were in his handwriting. The pencil tracing, closely examined, does not appear to have altered the original writing, and the inference may reasonably be drawn that it was done for the purpose of increasing the legibility. The defendant testified that she was present when her husband paid the balance of $400 to Putnam, and was given the receipt. In explanation of the blurred condition of the paper, she said that Woodard carried it in his pocket, where she found it a month after his death, creased and discolored. Her husband, she testified, was ill and confined to the house at the time he was given the receipt and during the remainder of his life in poor health; and this reason was given to account for his failure to demand the promised deed of the farm.

■ With the record standing thus it cannot be said that the findings were without evidentiary support. We must presume, since the contrary does not appear, that the Chancellor considered all the evidence bearing upon the issues. *McClary* v. *Hubbard,* 97 Vt. 222, 237, 122 Atl. 469. And we cannot doubt that he did so with impartial patience and adequate reflection. *Platt, Admx.* v. *Shields & Conant,* 96 Vt. 257, 267, 119 Atl. 520. That he had in mind the rule that the burden of proof on the issue of payment was upon the defendant (*Rutland Ry. L. & P. Co.* v. *Williams,* 90 Vt. 276, 278, 98 Atl. 85) is shown by the fact that the findings are affirmative. As we have seen, the weight of the evidence was for him to decide. And so, also, was the credibility of the witnesses. *Ward* v. *Lyman,* 108 Vt. 464, 468, 188 Atl. 892. It is not our province to say that the persuasive effect upon the trier ought to have been otherwise than it was.

*Decree affirmed.*