**MT. EVEREST SKI SHOPS, INC.**

v.

**The SKI BARN, INC., and
Nordica USA, Inc.**

**NORDICA USA, INC.**

v.

**MT. EVEREST SKI SHOPS, INC.**

Civ. No. 87–106.

United States District Court,
D. Vermont.

Oct. 2, 1989.

David S. Acker, Winston & Strawn, Chicago, Ill., and Rolf M. Sternberg, Barr, Sternberg & Moss, Bennington, Vt., for plaintiff.

Robert B. Hemley and Dennis R. Pearson, Gravel & Shea, Burlington, Vt., for Nordica USA, Inc.

**MEMORANDUM OF DECISION**

HOLDEN, Senior District Judge.

Mt. Everest Ski Shops, Inc., filed a complaint against The Ski Barn, Inc., and Nordica USA, Inc., on March 9, 1987, in the District of New Jersey. The present phase of this controversy concerns the amount that defendant Nordica USA is entitled to recover on its counterclaim for attorney's fees, costs and disbursements. The court will refer briefly to the extended procedural history to the extent necessary to deal with the problems of separating and allocating the professional services and expenses properly attributed to the adjudication of the contract claim alleged in Counts VIII and X of the complaint.

The complaint opens with the statement that the plaintiff Mt. Everest Ski Shops brings the action for treble damages and other injunctive relief based on a conspiracy in restraint of trade between the defendants Ski Barn and Nordica USA in violation of the federal antitrust laws. It is further alleged that the defendants violated various statutory, contract and tort law of the State of New Jersey. The damages sought to be recovered, according to the complaint, are "at least $3,355,500.00 before trebling, plus reasonable attorneys' fees and costs."

In granting partial summary judgment on Nordica's counterclaim for attorney's fees, the court restricted the permissible recovery to attorney's fees and costs attributable to defense of Count VIII of the complaint which alleged breach of contract by Nordica. The court further held that the defendant Nordica's resistance to the plaintiff's petition for specific performance and preliminary injunctive relief was within paragraph 18(c) of the Authorized Dealer Agreement.[1] *Mt. Everest Ski Shops, Inc.*

---

1. 18. Disputes and Governing Law
   (a) Except as hereinafter qualified, all questions or controversies arising out of or in any way relating to this Agreement shall be submitted to the United States District Court for the District of Vermont, or in the event that District Court is without subject matter jurisdiction, to the courts of the State of Vermont having subject matter jurisdiction, and the parties submit themselves to the personal jurisdiction of such District Court of Vermont State Court as the case may be, and any service of a summons, process or other paper in connection with such proceeding may be

*v. Ski Barn,* No. 87–106, Memorandum and Interlocutory Order (filed March 23, 1989).

Nordica has modified its claim from $105,158.16, *Id.* p. 3, to $83,543.14 (Pltf's Ex. AA). The plaintiff Mt. Everest opposes Nordica's revised application for all litigation costs, contending that the amount claimed "should be denied in its entirety or, at a minimum, drastically reduced." At the bench trial which followed, the plaintiff conceded that Nordica had paid the amount of fees and expenses claimed, that the time expended and hourly rates charged were reasonable. The plaintiff challenges the allocation of the total amounts which Nordica attributes to the contract claims and to the preliminary injunction proceedings. Mt. Everest offered no independent evidence to support its contention that Nordica's allocation is unwarranted. It has left Nordica to its proof, urging only that it has failed to sustain its burden in this respect.

In undertaking to discharge the burden of proof on the counterclaim consistent with the court's ruling, Nordica has organized the evidence in the chronology of progressive stages of the litigation. The evidence consisted principally of lists of services performed by attorneys and other employees of Nordica's Vermont firm, Gravel & Shea. The lists were composed from attorney charge slips which indicated the date and time expended during the relevant time periods by the members of the firm who performed the professional services throughout the course of the litigation. The live testimony was presented by Dennis R. Pearson, Esquire, a member of the firm of Gravel & Shea, and Charles Macomber, Nordica's comptroller.

The initial legal services were incurred by Nordica shortly before the action was commenced in the federal district court in New Jersey. The services were performed by three members of Gravel & Shea in association with Nordica's New Jersey counsel, Sills, Beck, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross (Sills Beck). The work was expended in preparation for the plaintiff's application to temporarily enjoin the defendant Nordica from terminating the dealership with Mt. Everest and to restrain the defendant Ski Barn from interfering with the plaintiff's business relationship with Nordica. Contemporaneously, Nordica's counsel in Vermont and New Jersey were engaged in resisting injunctive relief and in preparing support of Nordica's motion to dismiss for lack of jurisdiction and for change of venue to the district of Vermont. The motion for change of venue placed considerable reliance on the forum selection clause, paragraph 18(a) of the Authorized Dealer Agreement.

Using the timetable, the witness Pearson applied various guidelines. These standards for allocation were structured by members of the Gravel firm who participated in the defense of the action from the beginning of the law suit. In reaching Nordica's claim for attorney's fees under paragraph 18, shown in the margin, the guidelines were applied in varying contexts according to the particular phase of the litigation when the professional work was done and the expense incurred.[2]

made in the matter for giving Notice as set forth in paragraph 11 of this Agreement.

(b) Nothing herein contained shall be construed as intended to preclude or in any way prohibit Nordica from instituting and otherwise prosecuting to judgment a lawsuit in any court of competent jurisdiction to effect the collection of any monies due it or to enforce any rights contained in this Agreement.

(c) The Authorized Dealer agrees to pay interest in accordance with Nordica's prices and terms sheets as in effect on the date of the order. In the event Nordica is the successful party on any claim by it, counterclaim by it, or defense by it in any action or proceeding brought by or against it with respect to the Authorized Dealer, Authorized Dealer shall pay, and hereby agrees to pay, in addition to all other sums which may be due, Nordica's reasonable attorney's fees, costs and disbursements attributable to such claim, counterclaim or defense.

(d) This Agreement shall be governed by and construed in accordance with the laws of the State of Vermont.

2. The categories were explained and applied as follows:

(1) Any time descriptions which specifically identify legal research, memo preparation, or other work pertaining to Plaintiff's federal antitrust or New Jersey statutory and common law claims, have been excluded or deducted, either in whole or in part if the time

*Findings*

In keeping with the court's directive, the witness Pearson reviewed the statement of fees and expenses paid by Nordica under the various components of the total billings to determine the billable time attributable to Counts VIII and X.

The New Jersey Proceedings

Starting with the commencement of the litigation in the New Jersey district court, the witness concluded that all professional services performed, and expenses paid prior to the transfer to Vermont were recoverable. Nordica claims all time, effort and expenses prior to the order transferring the action to Vermont. *Mt. Everest Ski Shops, Inc. v. Ski Barn, Inc.*, No. 87–859 (D.N.J. Apr. 13, 1987). The claim includes all the professional services performed by Gravel & Shea and its associate New Jersey counsel.

The record does not bear out the claim. The direction which the proceeding took in the early stages was as much concerned with the federal antitrust and pendent state claims as with the contract. The New Jersey proceedings concerned the contract between the Ski Barn and Nordica, and Ski Barn's involvement in the antitrust conspiracy which was charged against both defendants.

The New Jersey court was also presented with Nordica's motion to dismiss for jurisdictional reasons. The motion was coupled in the alternative with the motion for change of venue.

The record of the proceedings in New Jersey bears witness to the fact that the court's concern was not confined to the contract alone. Federal and state antitrust statutes, the other New Jersey statutory claims, the convenience of the parties, and the opposition of Ski Barn to the change of venue, were factors outside the contract which were discussed in the New Jersey proceedings. The request for preliminary equitable relief was neither heard nor decided prior to the transfer from New Jersey; it was adjudicated in the district of Vermont.

The court finds that the litigation costs expended by Nordica in the New Jersey proceedings are not entirely attributable to the contract and equitable claims. Other aspects of the proceedings in New Jersey required equal time. The same consideration holds true for the professional services performed by Nordica's counsel, associated

description includes recoverable work. The percentage of time excluded varies from 20% to 90% depending upon [the] best estimate of the relative quantities of work involved.

(2) All undifferentiated time entries, or parts thereof, up through and including transfer of this action from the District of New Jersey to this Court, and all time entries which specifically related to Nordica's initial motion to dismiss and supporting memoranda, have been retained [without charge from the first submission] ... on the belief that such attorney's fees and costs were incurred to establish and enforce the dealer agreements and other related contract issues, such as the forum transfer and choice of law clauses.

(3) All time entries for work relating to developing and establishing the facts of the case in preparation for, and attendance at, the hearings held in New Jersey and the preliminary injunction hearing held in this Court on July 8–9, 1987, have been retained as originally set forth....

(4) All time entries for work relating to discovery or to other undifferentiated work on the case, up through and including the Court's opinion and order of April 29, 1988

granting Nordica summary judgment on the breach of contract claim, have been retained as originally set forth in [support of counterclaims].... (Emphasis in original). [A]ll time entries subsequent thereto have been deleted in their entirety. Most if not all of the discovery in this case, and all motion practice related thereto, was contract-related in that such discovery would have been pursued by both sides even if Plaintiff had originally brought this suit containing only the breach of contract and specific performance/equitable relief claims.

(5) All time entries for legal research and other work related to Nordica's memorandum in support of CoDefendant Ski Barn's motion for summary judgment, have been deleted in their entirety as directed by the Court.

(6) All time entries for legal research and other work related to Nordica's first Motion for Summary Judgment on all claims, dated November 17, 1989, have been reduced generally by a factor of 80% from those set forth in Exhibit A to the September 2, 1988 Hemley Affidavit, based on the Court's direction that attorneys' fees are recoverable only in defense of 2 of the 10 claims asserted by Plaintiff. (Nordica Exhibit EE).

with Gravel & Shea, in the New Jersey phase of the litigation.

The court finds the attorney's fees billed to Nordica by Gravel & Shea for the New Jersey phase of the action amounted to $33,721. Of this amount, approximately one half is attributable to matters unrelated to the contract; the claim against Ski Barn, Inc., the federal antitrust claim against Nordica, the New Jersey common law and statutory counts. For professional services performed by Gravel & Shea, prior to the transfer to this district, Nordica is entitled to recover $16,860. Attorney's fees of Sills Beck recovery should be adjusted to $4,315.16.

*Proceedings in the District of Vermont*

■ During the brief interim from April 23 to May 4, 1987, only 20% of the services were allocated to the contract. The billings for services performed during May and June in 1987 have been calculated at 50% by Nordica's counsel. The apportionment includes a downward adjustment which varied from 20% to 80% for legal research on New Jersey statutory claims, preparation for depositions and briefing on the conspiracy and contract counts. The court finds this apportionment is reasonable and substantially correct.

■ In accordance with the court's prior rulings, counsel for Nordica have assigned, with minor adjustments, all of the litigation expenses paid by Nordica for preparation and participation in the evidentiary hearing of the plaintiff's petition for preliminary injunctive relief which ended July 9, 1987. The evidence supports the allocation of all this part of the litigation expense to the contract claim and the plaintiff's request for injunctive relief.

The billings paid by Nordica for August 3 through August 19, 1987 were apportioned to the contract claims on a 75% basis, except for 2.5 hours on August 6 which were reduced by 50%. Time spent from August 23 through September 9, 1987 was similarly divided. The evidence supports Nordica's claim that counsel fees and expenses for the period August 3, 1987 through September 9, 1987, as adjusted in Defendant's Exhibit CC, are recoverable.

The litigation expense during the period from September 10 through November 9, 1987 is not claimed by Nordica, except for 5.6 hours deleted from the attorney's fees claimed for the reason that this time was expended in support of Ski Barn's motion for summary judgment.

Ski Barn's motion for summary judgment was granted on October 13, 1987. It was followed by the plaintiff's motion for reconsideration. Professional time billed by Nordica's counsel, resisting this request, has similarly been deleted by the plaintiff.

■ Shortly after this event, Nordica undertook the preparation of its own motion for summary judgment on all the claims alleged against this defendant. For the legal services expended on this phase of the action, Nordica's evidence limits compensation to 20% of the total time billed by Gravel & Shea from November 9, 1987 until May 5, 1988. The 20–80 ratio is based on the subject matter of the remaining eight counts which were not based on the dealer agreement. The court finds this allocation to be fair and reasonable. All of the remaining litigation costs paid by Nordica for legal services and expenses incurred subsequent to May 5, 1988, have been relinquished from its counterclaim.

The total amount of attorneys' fees, costs and disbursements expended by Nordica in successfully defending against all claims alleged in the complaint as of September 6, 1988 was $105,158.16. Since the amount was not apportioned to exclude claims that were not referable to the contract, its litigation expense was recalculated and resubmitted by the claimant with supporting documents in the amount of $83,543.14.

Adjusted Attorney's Fees

The total amount of attorney's fees expended by Nordica for legal services attributable to the defense of the dealership agreement and in opposition to Mt. Everest's petition for equitable relief incurred in the New Jersey proceedings, consisted of

$33,721 for professional services performed by Gravel & Shea and $8,103.05 for associate counsel in Newark. Applying the 50% factor to adjust for fees not covered by paragraph 18(c), the court finds that Nordica is entitled to recover for professional services paid to Gravel & Shea in the amount of $43,119.50. For professional services paid to the law firm of Sills Beck, the adjusted amount of $4,315.16 is included and recoverable in the summary finding which follows.

Disbursements by Gravel & Shea

Disbursements made by Gravel & Shea in the amount of $9,520.58 have been reduced by 33% of the photocopying cost and by 25% of the "Lexis Usage" expense. This adjustment reduces the amount presently claimed to $8,428.66. (Exhibit DD p. 39). This amount includes $1,031.47 paid by Gravel & Shea to Sills Beck for services and disbursements from April 3, through June 30, 1987 (Exhibit FF).[3] This cost appears to be duplicated by inclusion in the *Summary of Nordica's Recoverable Defense Costs,* Exhibit AA. Accordingly, the court reduces the amount of Gravel & Shea's recoverable disbursements to $7,397.19, since this amount is claimed and allowed as fees and expenses claimed for expenditures related to Sills Beck's representation of Nordica in the New Jersey proceedings.

Disbursements Directly Paid by Nordica

■ Nordica's comptroller, Charles Macomber, testified that he directly disbursed the amount of $6,000.56. These payments were made for discovery, travel and other costs related to the evidentiary hearing on Mt. Everest's petition for specific performance and injunctive relief at Rutland on July 8, and 9, 1987. The evidence of these disbursements is not contradicted and will be allowed in the amount claimed.

Adjusting the *Summary of Nordica's Recoverable Defense Costs* by the amount of $1,031.47 and the 50% factor applied to the New Jersey phase of the action, the court finds:

| | |
|---|---|
| The amount to be allowed in the counterclaim for Gravel & Shea's participation | $50,516.09 |
| The amount recoverable for participation of Sills Beck is adjusted to | 4,819.06 |
| Litigation expense disbursed directly by Nordica | 6,000.56 |
| Total Recoverable Fees & Disbursements under paragraph 18, Authorized Dealer Agreement | $61,335.71[4] |

*Conclusions*

The problem of separating the litigation costs attributable to Nordica's counterclaim under paragraph 18 of the final Au-

---

**3.** Includes $527.55 attorney's fees paid to Sills, Beck by Gravel & Shea with "unbilled disbursements of $503.52" in sum of $1,031.47. Nordica Exhibits DD p. 39 & FF (Ex. B).

**4.**

| | | Claimed | Less Adjustments | | Recoverable |
|---|---|---|---|---|---|
| 1. | Gravel & Shea | $68,408.06 | (N.J. atty fees) (disbursements) | $16,860.50 1,031.47 | $50,516.09* |
| 2. | Sills Beck fees & expenses | 9,134.52 | (attorney fees) | 4,315.46 | 4,819.06** |
| 3. | Nordica dir. exp. | 6,000.56 | | | 6,000.56 |
| | | $83,543.14 | | $22,207.43 | $61,335.71 |

| | | |
|---|---|---|
| | Total apportioned to counterclaim | $61,335.71 |
| * | Total Gravel & Shea attorney fees & expenses | $68,408.06 |
| | Adjusted by one-half of total Gravel & Shea attorney fees charged from 3/6/87 through 4/30/87 | 16,860.50 |
| | See footnote 3 above | 1,031.47 |
| | | $50,516.09 |
| ** | Total Sills Beck fees and disbursement | 9,134.52 |
| | Adjustment for attorney fees billed by Sills 3/6/87 through 4/30/87 (see footnote 3 above) | 4,315.46 |
| | | $4,819.06 |

thorized Dealer Agreement between the parties, for the most part, derives from Mt. Everest's joinder of multifarious claims against the two defendants named in the complaint. In this setting, precise apportionment is neither practical nor capable of exact calculations. The burden of proof resides with Nordica as the party seeking recovery on its counterclaim for the attorney's fees and expenses. From the mix of various claims, Nordica has presented prima facie proof of its right to recover on the counterclaim. Against this showing, the plaintiff has brought no persuasive evidence to oppose Nordica's entitlement under paragraph 18 of the Authorized Dealer Agreement.

Nordica's counterclaim to recover its litigation expenses in successfully defending Mt. Everest's action on the dealer agreement has a much different bearing than the more common suit between an attorney and his client concerning charges for professional services. This area in the law of Vermont was fully covered in *Platt, Admx. v. Shields and Conant*, 96 Vt. 257, 119 A. 520 (1923).

In dealing with the subject of attorney's fees in the present litigation which combines the plaintiff's federal antitrust suit with the contract claims, care must be taken by the court lest the "incentive ... for instituting private antitrust actions ... be dampened by the threat of assessment of defendant's attorneys' fees and other costs as a penalty for failure." *Byram Concretanks, Inc. v. Warren Concrete Products Co.*, 374 F.2d 649, 651 (3rd Cir.1967), followed in *Aetna Cas. & Surety Co. v. Liebowitz*, 730 F.2d 905 (2d Cir.1984).

It is reported in the preceding findings that all attorney's fees and expenses incurred from the filing of the complaint and the transfer of the action to the district of Vermont have been apportioned and claimed by Nordica as referable to the contract aspect of the litigation. The apportionment was based on the assumption that the discovery and proceedings in New Jersey were principally based on the choice of law and forum selection clause of the Authorized Dealer Agreement. The court found that the facts shown in the record do not sustain the assumption. Considerations other than contract were involved in the New Jersey proceedings.

■ A forum selection clause imposed in a dealership agreement is relevant to the question of proper venue in the federal courts, but it is not controlling. Venue in this action is governed by application of 28 U.S.C. § 1404(a)

> Section 1404(a) directs a District court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The District Court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that in addition to private concerns, come under the heading of "the interest of justice."

*Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 30, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988).

The litigation costs expended in the New Jersey proceedings were not entirely contract based. It appears from the total record that the time and effort expended by court and counsel were about equally divided between the dealership agreement and other matters in litigation. Hence, an adjustment by one half the amount claimed for this phase of the action is imposed. The remaining allocations presented by Nordica concerning subsequent segments of the action are sustained by the evidence and transcripts of earlier proceedings in the record.

This memorandum of decision will be filed pursuant to Rule 52(a), Federal Rules of Civil Procedure. The clerk is directed to enter final judgment for the defendant Nordica USA to recover on its counterclaim against the plaintiff Mt. Everest Ski Shops, Inc., the sum of $61,335.71, with interest at the rate provided by law with its costs. The clerk is further directed to enter judgment that the plaintiff Mt. Everest Ski Shops, Inc., take nothing against the defendants Ski Barn, Inc. and Nordica USA, Inc. These claims will be dismissed as directed

in prior proceedings under the Federal Rules of Civil Procedure 56(d).

It is SO ORDERED.