Ford Motor Credit Co. v. Sicely, No. 430-7-02 Wncv  (Teachout, J., Feb. 3, 2003)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


**STATE OF VERMONT**
**WASHINGTON COUNTY, SS.**

| | | |
|---|---|---|
| **FORD MOTOR CREDIT COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Washington Superior Court** |
| **v.** | ) | **Docket No. 430-7-02 Wncv** |
| | ) | |
| **RICHARD R. SICELY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF DECISION**

This is a collection case in which Defendant defaulted.  The court scheduled this for an evidentiary hearing on attorneys' fees, and the case came before the court on October 28, 2002. Plaintiff is represented by Alan Bjerke, Esq.

Plaintiff held a motor vehicle retail installment sales contract upon which Defendant defaulted.  The vehicle was repossessed and sold, and after the sales proceeds were credited to the Defendant's account, a balance remained due.  Plaintiff seeks judgment pursuant to the terms of a written financing contract in the amount of the deficiency plus interest, costs, and attorneys' fees.  The contract provides for the lender to be entitled to attorneys' fees in the event legal action is undertaken for collection.

Plaintiff filed a motion for default judgment accompanied by an affidavit as required for default judgments.  Plaintiff seeks an award of attorneys' fees of $650.00, based on an affidavit. The court granted the motion for default judgment but scheduled a hearing to determine the reasonableness of the attorneys' fees requested.  The court is aware that the Plaintiff's attorney practices in one of the largest collection law firms in the state, and that the law firm requests the same amount in almost every case, and files a virtually identical affidavit in every case.

The court heard testimony from Ilerdon Mayer, Esq., who has represented creditors as a collections attorney in Vermont since 1986.  Attorney Mayer testified that the hourly rate of $150.00 charged by Plaintiff's attorney is a fair and reasonable rate for an attorney practicing in Burlington, and the court so finds.  He supported Plaintiff's request for $650.00 in attorneys' fees, and testified in support of 4.5 hours as a fair and reasonable amount of time to spend for the work involved.  Attorney Mayer charges less for default collection cases of this type, which

generally take 2-3 hours of attorney time. The attorney needs to review the underlying contract and the file, determine whether all requirements for notice have been met, determine a correct address for the defendant, and prepare all documents, taking care to ensure that there have been no violations of the Fair Debt Collection Practices Act and the state Consumer Fraud Act. Collections work entails processing a large number of cases, and an attorney's strategy in handling his or her caseload influences the amount of attorneys' fees that the attorney seeks to have included in the judgment. Attorney Mayer prefers to bill at the lower end of the range so as to avoid spending time supporting the amount requested. The court finds that the average vehicle retail installment contract in which the defendant defaults takes 2-3 hours of attorney time.

Determining the reasonableness of the fee requested is a factual matter over which "[t]rial courts have wide discretion." Parker, Lamb & Ankuda, P.C. v. Krupinsky, 146 Vt. 304, 307 (1985). "Courts have struggled to formulate the proper measure for determining the 'reasonableness' of a particular fee award." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 562 (1986) (Delaware Valley). "[T]he trial court is in the best position to determine a reasonable fee." Human Rights Commission v. Labrie, Inc., 164 Vt. 237, 251 (1995) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

In routine consumer collection cases, guidelines for determining the amount of attorneys' fees for which the debtor may become responsible is not set forth with specificity in the underlying contract. Rather, the trial court must determine a reasonable amount of attorneys' fees based on the evidence. In the large number of cases in which the defendants default, the court does not have the benefit of the adversarial process in raising points from different perspectives. The court itself has the responsibility of approving fees that are "reasonable" to be included in the judgment.

In collection cases, an attorney may have an arrangement with his or her client to be paid on a contingency basis. Thus, two cases which have identical contract terms and deficiency and interest amounts, and which both require the same amount of attorney time, could have judgments with different amounts for attorneys' fees, depending on how much of each judgment was actually paid by the debtor. In addition, the amount of attorney time required in an individual case varies from under two hours to over three hours, even though the average is 2-3 hours and there is a standard list of attorney tasks to be performed.

Attorney Bjerke argued, and the court agrees, that the amount to be included in a judgment order should not vary based on the actual amount collected in an individual case. This would produce inequitable results, as one defendant could be required to pay more than another with a judgment in an identical amount, simply because the first defendant paid a greater proportion of the judgment than the second defendant. It would also be impractical since it calls for calculation after payment. Therefore, the court agrees with Attorney Bjerke that the amount of attorneys' fees to be included in the judgment should be calculated as a reasonable amount applicable in all similar situations, regardless of how much of the judgment is ultimately paid by the debtor.

Attorney Bjerke further argued, and the court agrees, that the amount to be included in a judgment order should not vary based on individual differences in the time expended in a particular case. In other words, a default judgment based on a consumer vehicle purchase contract may take 1.5 hours of attorney time in one case and 4.5 hours of attorney time in another, based on individual factual variations, even though the tasks required in each case are uniform. The evidence shows that the average is 2-3 hours, and thus the fairest basis on which to assess attorneys' fees against Defendant is a standard fee applicable to all defendants in the same situation, based on the average time expended by an attorney in this type of case.

The most equitable approach to determining the reasonableness of attorneys' fees in these cases is the method most likely to produce a reasonable and consistent result: that approach is the contemporary "lodestar" approach. The Vermont Supreme Court has stated that "we will not reverse a fee award based on the lodestar approach absent an abuse of discretion." Human Rights Commission v. Labrie, Inc., 164 Vt. 237, 251 (1995).

The lodestar approach was developed by federal courts in the context of fee requests founded on fee shifting statutes to help make purely discretionary analyses more consistent and, hence, amenable to meaningful review. See Delaware Valley, 478 U.S. at 563. Prior to the development of the lodestar approach, courts, in exercising discretion, balanced twelve factors taken from the American Bar Association's Model Code of Professional Responsibility Disciplinary Rule 2-106, which included:

(1) the time and labor required;
(2) the novelty and difficulty of the question;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorney;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

Delaware Valley, 478 U.S. at 562 fn.7.[1] Analysis of the many factors produced inconsistent

---

[1]The Model Code factors are substantially similar to the factors set out in Platt v. Shields, 96 Vt. 257, 269 (1923), cited in Krupinsky, 146 Vt. at 306, and factors in the Vermont Code of Professional Responsibility Disciplinary Rule 2-106(B), cited in Krupinsky, 146 Vt. at 307. Substantially similar sets of factors currently appear in the American Bar Association's Model

results, and because of this inconsistency, the lodestar approach emerged. See id. at 562-63.

Initially, the lodestar approach had two steps. The lodestar itself is the reasonable number of hours spent on the case multiplied by the reasonable rate. See id. at 563. The court would then adjust the lodestar figure in relation to "(1) the contingent nature of the case, reflecting the likelihood that hours were invested and expenses incurred without assurance of compensation; and (2) the quality of the work performed as evidenced by the work observed, the complexity of the issues and the recovery obtained." Id. (quoting Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3rd Cir. 1973)). This method created an analytical structure but still produced inconsistent results. See Delaware Valley, 478 U.S. at 563.

In Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), the United State Supreme Court adopted the lodestar figure as the "most useful starting point for determining the amount of a reasonable fee." Delaware Valley, 478 U.S. at 564. Acknowledging that many of the twelve factors were subsumed by the lodestar figure itself, the Court left any adjustments based on those factors to the trial court. Soon thereafter, the Court stated that once an applicant carried the burden of showing the reasonableness of the claimed number of hours and rate, then that lodestar figure "is presumed to be the reasonable fee." Delaware Valley, 478 U.S. at 564 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). The Blum Court prohibited upward adjustments based on novelty, complexity, special skill, experience, and quality of representation because all are subsumed by the lodestar. The Court anticipated that modifications to the strong presumption of reasonableness in the lodestar figure should be "rare" and "exceptional" and must be based on "specific evidence" accompanied by detailed findings. Delaware Valley, 478 U.S. at 565 (quoting Blum, 465 U.S. 886, 888-901 (1984)). See also Human Rights Comm'n v. Labrie, Inc., 164 Vt. 237, 249-52 (1995) for a discussion and application of the lodestar approach in Vermont.

Attorney Bjerke advocates the use of the lodestar approach in default consumer collection cases such as this, and the court agrees that this represents the most consistent and equitable approach, resulting in a presumptive standard fee for such cases.

Application of the lodestar approach to this case, based on the evidence, is that the reasonable number of hours is 2.5-2.75 and the reasonable rate for a Burlington area attorney performing this type of work is $150 per hour. The fee strongly presumed to be reasonable therefore is in the range of $375-$412.50 (2.5 hours x $150= $375; 2.75 hours x $150=$412.50). Plaintiff has not offered specific evidence supporting an upward adjustment to the lodestar. The fact that there may be a contingency aspect to the actual payment to the attorney is not a reason to enhance a fee award above the lodestar amount. See generally City of Burlington v. Dague, 505 U.S. 557 (1992) (discussing in detail why a contingent agreement should not enhance the lodestar amount). Therefore, the court concludes that a reasonable attorneys' fee in this

---

Rules of Professional Conduct Rule 1.5 and the Vermont Rules of Professional Conduct Rule 1.5.

consumer credit case involving a default judgment, based on the lodestar approach, is $400.00.

## ORDER

Attorneys' fees are approved in the amount of $400.00.

Dated at Montpelier, Vermont this __ day of January, 2003.

_____
Mary Miles Teachout
Superior Court Judge